**CITY OF COLORADO SPRINGS,
Petitioner,**

v.

**Kathleen F. CONNERS, Respondent.**

**No. 98SC137.**

Supreme Court of Colorado,
En Banc.

Feb. 7, 2000.

---

·Patricia K. Kelly, City Attorney, Stacy L. Rouse, Assistant City Attorney–Employment, Colorado Springs, Colorado, Attorneys for Petitioner.

John L. Maska, Colorado Springs, Colorado, Attorney for Respondent.

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Michael E. McLachlan, Solicitor General, Garth C. Lucero, Deputy Attorney General, Civil Litigation Section, Tort Litigation Unit, Denver, Colorado, Attorneys for Amicus Curiae State of Colorado.

Thomas A. Feldman, Roseman & Kazierski, LLC, Barry D. Roseman, Elena J. Eisenberg, Michael P. Cerbo, Denver, Colorado, Attorneys for Amici Curiae Plaintiff Employment Lawyers Association and the Colorado Association of Public Employees.

Justice BENDER delivered the Opinion of the Court.

## I. INTRODUCTION

In this case, we address the question of whether claims for non-compensatory equitable relief under the Colorado Civil Rights Act (CRA) are claims for "injuries which lie in tort or could lie in tort" for the purposes of the Colorado Governmental Immunity Act (CGIA) and thus whether such claims are either barred by or subject to the notice provisions of the CGIA. Petitioner, the City of Colorado· Springs, appeals a decision by the court of appeals reversing the trial court's dismissal of a complaint by Kathleen F. Conners, respondent, against the City. *See Conners v. City of Colorado Springs,* 962 P.2d 294, 299 (Colo.App.1997). Conners sued the City claiming that she had been subjected to a hostile work environment and retaliatory discharge in violation of the CRA. Conners also filed common-law claims for invasion of privacy and outrageous conduct, and she later sought to add a federal Title VII claim against the City.

The trial court dismissed Conners's claims, ruling that the CGIA barred the claims because Conners did not comply with the notice requirements of the CGIA. The trial court denied as untimely Conners's request to add the Title VII claim. The court of appeals reversed in part, holding that a claim brought under the CRA "is not a claim that lies in tort or could lie in tort," and thus Conners's failure to comply with the notice provisions of the CGIA did not bar her CRA-based claims. *Conners,* 962 P.2d at 298. The court of appeals affirmed the trial court's decision that Conners's common-law claims were barred by the CGIA. *See id.* at 299.

We hold that claims for non-compensatory equitable relief based on violations of civil rights statutes such as the CRA are not claims for "injuries which lie in tort or could lie in tort" for the purposes of the CGIA. Accordingly, actions under the CRA that are equitable and non-compensatory in nature are not claims for which the CGIA provides public entities immunity from suit. There-

fore, these claims do not have to comply with the notice provisions of the CGIA. Hence, we affirm the result reached by the court of appeals and remand the case with instructions to return it to the trial court for further proceedings consistent with this opinion.

## II. FACTS AND PROCEDURAL HISTORY

Conners worked for the City of Colorado Springs from May 1990, until February 1993. She alleges that in November of 1992, she made informal complaints that another employee harassed her by using vulgar and profane language of a sexually suggestive nature. Conners also alleges that she was discriminated against in work assignments and other conditions of her employment because of her sex and because she had complained of sexual harassment.

In February of 1993, the City fired Conners, purportedly for a lack of work. Conners claims that her job duties "were taken over by other employees" and that "other employees were hired" to perform jobs that she could have performed. Conners asserts that the City fired her because she filed sexual harassment complaints and because she claimed to be a victim of sexual discrimination.

Pursuant to the procedures set forth in the CRA for discriminatory employment claims, Conners filed an administrative complaint with the Colorado Civil Rights Division (CCRD) in July of 1993.[1] The CCRD found that her claim lacked probable cause in January, 1994.[2] Conners appealed this decision to the Colorado Civil Rights Commission, which upheld the CCRD's decision and issued Conners a right-to-sue letter in February 1994.[3] Under the CRA's statutory mandate, Conners had to exhaust these administrative remedies as a condition precedent to filing suit in district court.[4]

Two months after receiving the right-to-sue letter from the Commission and approximately thirteen months after her discharge, Conners filed suit in district court against the City for "unfair or unlawful employment practices" under the CRA, alleging a hostile work environment, discrimination because of her sex, and retaliatory termination. Conners amended her complaint to include common-law claims for invasion of privacy and outrageous conduct. She later sought to amend her complaint a second time and add a claim under Title VII of the federal Civil Rights Act. See 42 U.S.C. §§ 2000e to 2000e–17 (1994).

In her initial complaint, Conners requested relief in the form of "an order compelling her reinstatement to the same or similar position, an award of back pay, attorneys fees, and such other relief as may be granted by law."

1. Section 24–34–306(1), 7 C.R.S. (1999) states:

   Any person claiming to be aggrieved by a discriminatory or unfair practice as defined in [the anti-discrimination provisions of the CRA] may, by himself or his attorney-at-law, make, sign, and file with the commission a verified written charge in duplicate which shall state the name and address of the respondent alleged to have committed the discriminatory or unfair practice and which shall set forth the particulars thereof and contain such other information as may be required by the commission. The commission, a commissioner, or the attorney general may in like manner make, sign, and file such charge. Prior to any other action by the commission, the respondent shall be notified of the charged filed against him.

2. After a person files a claim alleging a violation of the CRA, the director must investigate the charge. See § 24–34–306(2)(a). Following this investigation, the director must either: (I) dismiss the charges if there is no probable cause; or (II) provide the respondent with notice of the charges, order the parties to participate in compulsory mediation, and endeavor to eliminate the discriminatory or unfair practice. See § 24–34–306(2)(b). If the director finds no probable cause, the director must notify both parties that the charging party has 10 days in which to file an appeal and that the charging party must file such an appeal before the party can bring an action against the respondent in district court. See id.

3. As a condition precedent to bringing an action in district court, a party must exhaust her administrative remedies available under the CRA, and a right-to-sue letter will often serve as evidence that a party complied with this requirement. See §§ 24–34–306(14) (requiring exhaustion of administrative remedies); 24–34–306(15) (stating that notice of right to sue constitutes final agency action and exhaustion of administrative remedies); 24–34–307 and 24–4–106 (requiring final agency action as condition precedent for judicial review in district court).

4. See § 24–34–306(14).

When Conners amended her complaint to include common-law claims against the City, she also revised her request for relief and specifically asked for "money damages" for the invasion of privacy and outrageous conduct claims. When Conners amended her complaint a second time seeking to add a Title VII claim, she maintained her request for both equitable relief and money damages as remedies for her various injuries.

The City moved to dismiss, asserting that the district court lacked jurisdiction because the CGIA barred the actions against the City. The City argued that because Conners failed to give the City sufficient notice within 180 days of her injury—as required by the CGIA—the CGIA barred the claims of retaliatory discharge and hostile work environment under the CRA.[5] The City also contended that the CGIA barred Conners's common-law claims.

The trial court agreed with the City and ruled that the CGIA's 180–day notice requirement applied to Conners's CRA and common-law claims. The court found that Conners failed to give the City notice within 180 days of her injury even though Conners filed her complaint with the CCRD and appealed the CCRD's decision to the Civil Rights Commission as required by the CRA. As a result of this failure, the trial court concluded that it lacked jurisdiction to hear Conners's state claims and thus dismissed the claims. The trial court rejected as untimely Conners's request to add the Title VII claim.

The court of appeals reversed in part, holding that that the CGIA does not apply to Conners's CRA claims against the City, and affirmed in part, ruling that the CGIA bars her common-law claims. *See Conners,* 962 P.2d at 299. Whether a legal action brought pursuant to another statute is subject to the

CGIA, the court of appeals ruled, must be determined by deciding whether the action lies or could lie in tort. *See id.* at 296. The court of appeals reasoned that an action brought under the CRA "is not a claim which lies in tort or could lie in tort," and therefore is not subject to the CGIA. The court based this determination on three considerations: (1) the primary purpose of the CRA is to effectuate the important public policy of eliminating workplace discrimination, not to provide relief to individuals; (2) the CRA contains its own notice provisions and authorizes an action by a public employee only after the exhaustion of specified administrative procedures; and (3) the limited nature of the relief authorized by the CRA, which is equitable in nature. *See id.* at 297–99.

The court thus viewed a CRA claim as similar to other actions authorized against the government that are neither contractual nor tortious in nature and that are not subject to the notice provisions of the CGIA, such as inverse condemnation actions[6] or actions for "unfair labor practices" under the Labor Peace Act.[7] *See id.* at 296. The court held, however, that Conners's common-law claims were for injuries which lie in tort and were thus barred by the CGIA. *See id.* at 299. Thus, the court affirmed the dismissal of the common-law claims, remanded the CRA claims to the trial court, and advised the trial court to reconsider its refusal to add Conners's Title VII claim. *See id.* at 299–300.

## III.  DISCUSSION

We granted certiorari to consider a single issue: whether the court of appeals erred in finding that claims brought pursuant to the CRA are not subject to the notice provisions of the CGIA. We substantially follow the

---

5.  Section 24–10–109(1) states:
    Any person claiming to have suffered an injury by a public entity or by an employee of a public entity thereof while in the course of such employment, whether or not a willful and wanton act or omission, shall file a written notice as provided in this section within one hundred eighty days after the date of the discovery of the injury, regardless of whether the person then knew all of the elements of a claim or of a cause of action for such injury. Com-

pliance with the provisions of this section shall be a jurisdictional prerequisite to any action brought under the provisions of this article, and failure of compliance shall forever bar such action.

6.  *See* Colo. Const. art. II, § 15.

7.  *See* §§ 8–3–104(12), –108(1), –121, 3 C.R.S. (1999).

court of appeals' reasoning in this case, and we agree with the result reached by that court. Initially, we review the nature and scope of the government's immunity from actions for injuries which lie in tort under the CGIA. Then we discuss whether a claim for non-compensatory equitable relief under the CRA is a claim barred by the CGIA. Because we conclude that it is not, we hold that the CGIA does not provide the government immunity from Conners's claims for reinstatement and back pay under the CRA, nor are these claims barred as a result of Conners's failure to comply with the notice provisions of the CGIA.

### A. Standard of Review

■ We begin by addressing the standard of review that we apply to the trial court's decision in this case. Because the question of whether the trial court had jurisdiction to hear Conners's claim is a matter of statutory construction, we are not bound by the lower court's determinations. *See Swieckowski ex rel. Swieckowski v. City of Fort Collins*, 934 P.2d 1380, 1383–84 (Colo.1997) (subjecting legal question of subject matter jurisdiction in context of CGIA to de novo review); *Gorman v. Tucker ex rel. Edwards*, 961 P.2d 1126, 1128 (Colo.1998) ("Interpretation of a statute is a question of law, and an appellate court is not bound by the trial court's interpretation.").

### B. Governmental Immunity from Actions for Injuries Which Lie in Tort or Could Lie in Tort

Next, we turn to discuss the CGIA and governmental immunity from suit in tort. This review provides a foundation to assess the City's claims of immunity from the actions brought by Conners.

8. In 1949, for example, the General Assembly waived sovereign immunity for suits in tort arising from automobile accidents caused by certain governmental officers. *See* ch. 118, 1949 Colo. Sess. Laws 268, 268–69 (amending statute to *impose liability on state, county, municipality, or quasi-municipality for "any injury to the person or property"* of an individual caused by the "tortious operation" of a motor vehicle by a police,

Before 1971, public entities enjoyed common-law sovereign immunity from suit and were liable for compensatory damages for injuries in tort only when constitutional or statutory provisions operated to waive the government's immunity.[8] *See, e.g., Faber v. State*, 143 Colo. 240, 241–42, 353 P.2d 609, 610 (1960) ("In this jurisdiction ... it has been uniformly held that in the absence of a statute creating such liability, the state and its instrumentalities are not liable in tort."). In 1971, this court abolished the common-law doctrine of sovereign immunity in *Evans v. Board of County Commissioners*, 174 Colo. 97, 98, 482 P.2d 968, 968 (1971).

In *Evans*, we departed from the tradition of sovereign immunity because of the unfairness of not permitting individuals harmed by the negligence of state employees to recover for their injuries:

> [T]here has been mentioned the injustice and inequity—even absurdity—of having recovery for negligence against individuals and against firms for negligence of their employees, but no recovery against governmental units for the negligence of their employees.

*Id.* at 100, 482 P.2d at 969. Rather than try to fine-tune exceptions to immunity, we abolished the doctrine, expressly noting that the legislature should determine the extent of the government's immunity from various torts. *See id.* at 105, 482 P.2d at 972. In theory, *Evans* would have had the effect of allowing public entities to be sued for any traditional common-law torts in addition to those causes of action for which immunity had previously been waived.[9]

In order to limit the potential liability to which *Evans* exposed public entities, the General Assembly responded by adopting the CGIA, which partially re-established governmental immunity. The CGIA provides public entities [10] immunity from all "actions for inju-

fire, or health department official of the public entity).

9. *Evans* never had this effect because the opinion was prospective and the legislature enacted the CGIA prior to the effective date of the opinion.

10. The City has governmental immunity under the CGIA because it falls within the definition in

ries which lie in tort or could lie in tort," with six specific exceptions.[11] *See* ch. 323, §§ 130–11–1 to –17, 1971 Colo. Sess. Laws 1204–1211 (enacting CGIA). Section 24–10–106(1) of the CGIA states:

> A public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by the claimant except as provided otherwise in this section.

*See also* §§ 24–10–102, –104, –108 (providing limited governmental immunity from suits for injuries that sound in tort). Thus, under the CGIA's terms and regardless of the type of action or form of relief asserted by the plaintiff, public entities are immune from "actions for injuries which lie or could lie in tort" unless the claim falls within an exception to that immunity.

However, the exact scope of governmental immunity under the Act is difficult to define because the meanings of the terms "tort" and "could lie in tort" are vague. A leading commentator on the subject observes, "Even though tort law is now recognized as a prop-

er subject, a really satisfactory definition of tort is yet to be found." W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 1 at 1 (5th ed.1984). The scope of governmental immunity is further complicated because the CGIA includes not only actions which lie in tort, but also those actions that *"could* lie in tort." Because the Act's language ·on its face is vague, we look to both legislative purposes and our cases interpreting the Act to determine the scope of governmental immunity from "actions which lie in tort or could lie in tort" for the purposes of the CGIA.

A central legislative purpose of the CGIA is to limit the potential liability of public entities for compensatory money damages in tort. *See* § 24–10–102.[12] Such liability poses a problem for public entities sued in tort because "unlimited liability could disrupt or make prohibitively expensive the provision of ... essential public services and functions." *Id.* This form of liability places a burden upon taxpayers, who ultimately face the "fiscal burdens of unlimited liability" incurred by the state in tort suits. *See id.*[13]

---

section 24–10–103(5), which defines a "public entity" as:

> [T]he state, county, city and county, municipality, school district, special improvement district, and every other kind of district, agency, instrumentality, or political subdivision thereof organized pursuant to law and any separate entity created by intergovernmental contract or cooperation only between or among the state, county, city and county, municipality, school district, special improvement district, and every other kind of district, agency, instrumentality, or political subdivision thereof.

11. Under section 24–10–106, individuals may sue public entities for injuries sustained as a result of: (1) the operation of a motor vehicle by a public employee; (2) the operation of a public hospital, correctional facility, or jail by a public entity; (3) a dangerous condition of any public building; (4) a dangerous condition of a public highway, road, or street; (5) a dangerous condition of any public hospital, jail, or public facility located in any park or recreation area maintained by a public entity, or public water, gas, sanitation, electric, power or swimming facility; or (6) the operation and maintenance of any public water, gas, sanitation, electric, power or swimming facility by a public entity. *See also, e.g., Walton v. State,* 968 P.2d 636, 645–46 (Colo. 1998) (allowing negligence action to proceed against state based on "dangerous condition of

any public building" exception to immunity under CGIA).

12. The legislature also cites as a purpose of the Act the "desirability of including within one article all of the circumstances" under which public entities may be sued for injuries which lie or could lie in tort. § 24–10–102. Further, the General Assembly identifies the need to limit the potential liability of public employees in order to allow them to perform their duties without being deterred by the fear of potential liability. *See id.* Another legislative goal of the CGIA is "to permit a person to seek redress for personal injuries caused by a public entity." *People v. Moldovan,* 842 P.2d 220, 222 (Colo.1992); *see also Board of County Comm'rs v. Sundheim,* 926 P.2d 545, 550 (Colo.1996) ("The CGIA clearly sought to balance the interests of citizens seeking relief from governmental abuses of power against the public interest of maintaining an efficient and fiscally responsible government.").

13. Earlier cases discussing sovereign immunity also recognized the importance of limiting the government's potential fiscal liability to individuals for injuries that sound in tort. *See, e.g., State v. Dawson,* 126 Colo. 490, 495–96, 253 P.2d 593, 596 (1952) (distinguishing case where state has allocated funds under contract from "an action in damages ... by which it is sought to saddle upon the state additional financial burdens").

The structural components of the CGIA further the legislative goal of limiting the government's potential fiscal liability. The Act's grant of immunity from actions in tort restricts the potential liability of public entities. The CGIA also imposes specific caps on the amount of monetary damages that claimants may be awarded and limits the amount of attorneys' fees that may be recovered in actions brought under the Act. *See* §§ 24–10–114, –114.5.

In addition to these limitations on potential fiscal expenditures, the CGIA's notice provisions also address the legislature's concern that public entities not face the burden of liability for personal injury suits. As a condition precedent to any suit authorized under the CGIA, a claimant must provide notice within 180 days of injury to the appropriate public entity. *See* § 24–10–109. In an early case interpreting the Act, we stated that along with providing notice of the need to investigate claims, allowing for the abatement of dangerous conditions, and fostering prompt settlement of meritorious claims, a central purpose of these notice requirements is to give public entities sufficient notice of potential claims to make proper budgeting and tax decisions. *See Antonopoulos v. Town of Telluride*, 187 Colo. 392, 398, 532 P.2d 346, 349–50 (1975). Thus, the notice provisions of the Act enhance the structural provisions that limit the potential liability of public entities.

■ Mirroring the legislative purpose of protecting public entities from potential financial liability, our cases interpreting the CGIA support the view that governmental immunity under the Act is immunity from actions seeking compensatory damages for personal injuries. For example, in *State Department of Highways v. Mountain States Telephone & Telegraph Co.*, we held that the plaintiff could not recover compensatory money damages from the Department of Highways even though the Department had breached a duty under the Excavation Requirements Statute. 869 P.2d 1289, 1291–92 (Colo.1994). In *City & County of Denver v. Desert Truck Sales, Inc.*, we held that even though an action for replevin is a possessory action, it is a claim that lies in tort and claims for return of a vehicle and compensatory damages for its unlawful detention, loss of use, and physical damage were barred under the CGIA. 837 P.2d 759, 765 (Colo.1992). In *State Board of Personnel v. Lloyd*, we held that an action seeking damages from harm to the plaintiff's professional reputation and ability to earn a living, pain and suffering, and destruction of the value of his professional education were "injuries" within the meaning of the CGIA, and therefore the plaintiff's claims against a governmental agency were subject to the notice provisions of the CGIA. 752 P.2d 559, 565 (Colo.1988). Thus, our precedent applying the CGIA consistently recognizes that governmental immunity under the CGIA limits the ability of plaintiffs to recover compensatory relief from public entities for actions for personal harms or injuries.

■ We note that the CGIA's grant of immunity is limited in the sense that immunity extends only to those actions involving "injuries which lie in tort or could lie in tort." As a result of *Evans*, public entities do not possess immunity from actions other than those covered by the CGIA, even if such actions require the government to expend funds redressing various harms to plaintiffs. Public entities are not immune from actions for damages arising in contract. *See, e.g., Berg v. State Bd. of Agriculture*, 919 P.2d 254, 258–59 (Colo.1996) (finding CGIA did not provide state immunity from promissory estoppel action because such an action is grounded in contract, not in tort). Thus, the CGIA grants public entities immunity only from "actions for injuries which lie or could lie in tort," not from other types of actions or from actions that are excepted from the CGIA's grant of immunity. *See id.* at 258.

### C. Actions Brought Pursuant to the CRA Are Equitable and Non–Compensatory in Nature

■ Having discussed the scope of governmental immunity under the CGIA, we now turn to analyze whether the CGIA provides public entities immunity from actions for relief under the CRA, such as the claims at issue in this case. After considering both the purposes of the CRA and the nature of

relief available under that statute, we conclude that actions for reinstatement and back pay under the anti-discrimination provisions of the CRA are not actions seeking compensatory damages for personal injuries. Instead, such actions represent claims best characterized as equitable and non-compensatory in nature. Thus, such actions neither lie in tort nor could lie in tort for the purposes of the CGIA.

We begin by reviewing the anti-discrimination provisions of the CRA that were originally enacted in 1963. *See* ch. 177, § 80–24–6, 1963 Colo. Sess. Laws 627–28. These provisions prohibit employers from engaging in a variety of discriminatory employment practices, for example, by requiring that employers not hire, discharge, promote, demote, harass, or discriminatorily compensate otherwise qualified persons on the basis of their race, sex, age, or other specified characteristics. *See* § 24–34–402(1)(a). The CRA details a variety of other forms of discrimination in which employers, employment agencies, and labor organizations are prohibited from engaging. *See generally* § 24–34–402(1)(a)–(h) (listing prohibited discriminatory and unfair employment practices). The prohibitions of the CRA apply to all "employers" in the state, defined broadly to include governmental entities.[14]

As we have stated, the legislature adopted these anti-discrimination provisions to fulfill the "basic responsibility of government to redress discriminatory employment practices on the basis of race, creed, color, sex, age, national origin, or ancestry." *See Ramos*, 759 P.2d at 731; *see also* § 24–34–402 (describing categories of persons protected by CRA). The CRA was not designed primarily to compensate individual claimants but rather to eliminate discriminatory practices as defined by the Act. *See Brooke v. Restaurant Servs., Inc.*, 906 P.2d 66, 68–69, 71 (Colo. 1995). In *Brooke*, we stated that any benefits to an individual claimant, such as the recovery of back pay, are "merely incidental" to the Act's greater purpose of eliminating workplace discrimination. *See* 906 P.2d at 71.

Relief authorized under the CRA includes: orders requiring the employer to cease and desist from the discriminatory practice or conduct; orders requiring the employer to take action regarding hiring, reinstating, or upgrading of employees, with or without back pay; and orders concerning on-the-job training programs, the posting of notices, and the making of reports regarding compliance with the Act. *See* §§ 24–34–405,[15] –

14. Section 24–34–401(3) defines "employer" as: the state of Colorado or any political subdivision, commission, department, institution, or school district thereof, and every other person employing persons within the state; but it does not mean religious organizations or associations, except such organizations or associations supported in whole or in part by money raised by taxation or public borrowing.
Section 24–34–304(5) defines "person" as "one or more individuals, limited liability companies, partnerships, associations, corporations, legal representatives, trustees, receivers, or the state of Colorado, and all political subdivisions and agencies thereof."
We note that the issue of whether Colorado Springs, as a home-rule city, is subject to the provisions of the CRA was not raised before this court and thus we do not address it here. We assume for the purposes of this opinion that the City is subject to the provisions of the CRA because the legislature provided a broad definition of "employers" to whom the CRA applies, specifically exempting only religious organizations. *See* § 24–34–401(3), *supra*. *See also Colorado Civil Rights Comm'n ex rel. Ramos v. Regents of the Univ. of Colo.*, 759 P.2d 726, 731 (Colo.1988) ("[T]he General Assembly has defined employer in singularly expansive fashion to mean the state of Colorado, its political subdivisions and its departmental and institutional components, and 'every other person employing persons within the state,' and has similarly defined 'person' to include one or more individuals, corporate and other forms of business associations, and the state of Colorado and all political subdivisions and agencies of the state.") (citations omitted).

15. Section 24–34–405 states:
In addition to the relief authorized by section 24–34–306(9), the commission may order a respondent who has been found to have engaged in an unfair or discriminatory employment practice to take affirmative action regarding: Back pay; hiring, reinstatement, or upgrading of employees, with or without back pay; the referring of applicants for employment by any respondent employment agency; the restoration to membership by any respondent labor organization; the admission to or continuation in enrollment in an apprenticeship program, on-the job-training program, or a vocational school; the posting of notices; and the making of reports as to the manner of compliance. The commission, in its discre-

306(9).[16]

The purpose of these remedies is to make the claimant whole within a particular setting, i.e., to place the claimant in the position she would have been in but for the discriminatory conduct. *See City & County of Denver v. Colorado Civil Rights Comm'n*, 638 P.2d 837, 839 (Colo.App.1981). These forms of relief, including even claims for back pay, are equitable in nature and are aimed at eliminating workplace discrimination, not compensating individuals for their particular injuries arising from violations of the CRA. *See Brooke*, 906 P.2d at 68–69, 71 (noting that equitable remedies under CRA further anti-discriminatory purposes of Act rather than compensate individual injuries); *Continental Title Co. v. District Court In and For the City & County of Denver*, 645 P.2d 1310, 1318 (Colo.1982) (holding that because relief authorized by anti-discrimination provisions of CRA is equitable and not legal, a claimant does not have a right to a jury trial).

Although we have not directly addressed the issue, the United States Supreme Court has held that similar relief under civil rights statutes is non-compensatory in nature and should not be considered an award of damages for personal injuries for income tax purposes. Assessing the statutory scheme for relief in discrimination suits under Title VII, the Supreme Court held that the "conception of injury and remedy" expressed in such cases is not directed at compensating individuals with money damages for personal, tort-like injuries. *See United States v. Burke*, 504 U.S. 229, 234–35, 239, 112 S.Ct. 1867, 119 L.Ed.2d 34 (1992). The Court held that the relief authorized under Title VII does not "recompense a . . . plaintiff for any of the other traditional harms associated with personal injury, such as pain and suffering, emotional distress, harm to reputation, or other consequential damages." *Id.* at 239, 112 S.Ct. 1867. Rather, the Court reasoned, equitable relief under Title VII—including back pay awards and other equitable relief—restores victims of discrimination "to the wage and employment positions they would have occupied absent the unlawful discrimination." *Id.* The purpose of placing a person in the wage and employment position they would have been in but for the discriminatory conduct is to make the person "whole" in the employment setting, not to compensate them for their personal injuries. *See id.; see also Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418–19, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975).

The Court concluded that, "a statute such as Title VII, whose sole remedial focus is the award of back wages" could not be said to redress tort-like personal injuries within the meaning of the tax code. *Burke*, 504 U.S. at 241, 112 S.Ct. 1867. Because the "conception of injury and remedy" under Title VII does not reflect a legislative intent to provide monetary relief as compensation for "tort-like personal injury," the Court held in *Burke* that awards of back pay under Title VII cannot be excluded from gross income as damages received on account of personal injuries. *See* 504 U.S. at 239–41, 112 S.Ct. 1867.

In a similar vein, in Colorado we look to the nature of the injuries and remedies presented by plaintiffs to determine whether the CGIA establishes governmental immunity from suit. In *Lloyd*, we held that the plaintiff's claims were to be categorized based in part on the specific relief sought. *See Lloyd*, 752 P.2d at 565. The plaintiff in that case sought monetary damages for harm to his professional reputation and ability to earn a living, for pain and suffering, and for destruction of the value of his professional education. *See id.* We held that these specific types of claims were included within the definition of "injury" under the CGIA and therefore subject to the Act's notice provisions. *See id.*

---

tion, may order such remedies singly or in any combination.

**16.** Section 24–34–306(9) states that if after a hearing the commission finds that a respondent has engaged in or is engaging in any discriminatory or unfair labor practice:

[T]he commission shall issue and caused to be served upon the respondent an order requiring such respondent to cease and desist from such discriminatory or unfair practice and to take such action as it may order in accordance with [the other provisions of the CRA].

■ As demonstrated in *Burke* and *Lloyd,* the trial court must consider the nature of the injury and relief sought to determine whether a particular claim is one for injuries which lie or that could lie in tort for the purposes of the CGIA. This must be done on a case-by-case basis because the same discriminatory conduct that violates a civil rights statute, for example, could also form the basis of a common-law suit for injuries in tort. *See Burke,* 504 U.S. at 239–40, 112 S.Ct. 1867. If a plaintiff seeks to redress discriminatory conduct and the relief does not compensate the plaintiff for any personal injuries, a court should conclude that the claims are not for injuries which lie in tort or that could lie in tort within the meaning of the CGIA. Conversely, a claimant who seeks compensatory relief for personal injuries suffered as a consequence of prohibited conduct, has brought a claim which lies or could lie in tort for the purposes of the CGIA. Thus, a court must examine the nature of the injury and remedy asserted in each case to determine whether a particular claim is for compensatory relief for personal injuries and is therefore a claim which lies or could lie in tort for the purposes of the CGIA.

We acknowledge that the practice of looking at the injury and remedy as part of the determination of whether a claim lies or could lie in tort is arguably inconsistent with the CGIA's language. The CGIA states that public entities are immune from suit for "injuries which lie in tort or could lie in tort regardless of whether that may be the type of action or *the form of relief* chosen by the claimant." § 24–10–102, – 106(1), –108 (emphasis added). This language could mean that a trial court must not look at the type of relief at issue when deciding whether the CGIA operates to bar a claim against the government. This interpretation is reasonable because some torts may involve equitable forms of relief, including nuisance, misrepresentation, invasion of privacy, and defamation. *See, e.g.,* W. Page Keeton, *supra,* § 89, at 640, § 105, at 729; Dan B. Dobbs, *Remedies* § 7.9, at 532–34 (1973). Thus, the form of relief alone, whether damages or equitable relief, does not govern the categorization of a claim as a tort or other type of action.

Despite this language, however, the trial court must consider the nature of the relief sought to determine whether a particular action "lies in tort or could lie in tort" within the meaning of the CGIA. As our discussion of *Burke* and *Lloyd* demonstrates, a trial court should determine whether an action is one for "injury which lies in tort or could lie in tort" under the Act by assessing whether the plaintiff seeks compensation for personal harms.

### D. Application

Applying this analysis to claims under the CRA, we conclude that the remedies authorized by the CRA reflect the legislature's intent that these provisions primarily address discriminatory employment practices, not personal injuries traditionally compensated in tort such as pain and suffering or emotional distress. *Compare Burke,* 504 U.S. at 239, 112 S.Ct. 1867 ("Nothing in this remedial scheme purports to recompense a Title VII plaintiff for any of the other traditional harms associated with personal injury ....") *with Brooke,* 906 P.2d at 71 ("[T]he Act is not designed primarily to compensate individual claimants, but to eliminate unfair or discriminatory practices as defined by the Act."). The concept of injury and remedy addressed by the CRA does not provide monetary compensation for tort-like personal injuries for those who are the victims of prohibited discrimination. Such claims are noncompensatory and equitable in nature, designed only to make the claimant whole in a particular setting. Hence, these claims are not for injuries which lie in tort for the purposes of the CGIA.

■ The CGIA's grant of immunity does not protect public entities from suits for noncompensatory relief deigned to redress general harms or prohibited conduct under statutes like the CRA, and Conners's claims for reinstatement, back pay, and other relief are distinct from the types of personal injury claims at which the CGIA is directed. Hence, we hold that the CGIA does not provide the government immunity from claims for relief under the CRA when such claims are not based on providing compensa-

tory relief to individuals but instead focus on the anti-discrimination purposes of the statute.

## IV. CONCLUSION

Conners seeks non-compensatory equitable relief in the form of back pay and reinstatement under the CRA, a civil rights statute designed to redress workplace discrimination. Conners relies on the general remedial purposes of the CRA, which are to discourage workplace discrimination and place victims of discrimination in the employment and wage positions they would have been in but for the discriminatory conduct. The relief sought by Conners "makes her whole" in the employment setting. Money received as back pay in this context does not compensate the plaintiff for any personal injuries, such as pain and suffering or emotional distress suffered as a victim of prohibited discrimination, that are typical of claims which lie or that could lie in tort.

Because Conners's claims for reinstatement, back pay, and other relief under the CRA are equitable and non-compensatory in nature, they are not claims for injuries that "lie in tort or could lie in tort" within the meaning of the CGIA. The CGIA does not provide the government immunity from those claims. Hence, because the CGIA is not implicated by Conners's pursuit of these claims, her failure to comply with the notice provisions of the CGIA has no bearing on her right to bring this action against the City. We remand this case to the court of appeals with instructions to return it to the trial court for further proceedings consistent with this opinion.