The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
May 8, 2025

**2025COA47**

**Nos. 24CA0298 & 24CA0325, *Bakes v. Denver Health* — Labor
and Industry — Health Care Worker Protection Act;
Government — Colorado Governmental Immunity Act — Notice
of Claim**

As a matter of first impression, a division of the court of
appeals considers whether any claims that might be asserted under
the Health Care Worker Protection Act (HCWPA), § 8-2-123, C.R.S.
2024, are subject to the notice requirement in the Colorado
Governmental Immunity Act (CGIA), § 24-10-109, C.R.S. 2024.

Without determining whether the HCWPA provides for a
private right of action, the division concludes that any claim that
might be asserted under the statute is subject to the CGIA's notice
requirement.  The division rejects the plaintiff's argument that a
potential HCWPA claim is akin to a claim under the employment
practices provisions of the Colorado Anti-Discrimination Act

(CADA), §§ 24-34-400.2 to -408, C.R.S. 2024, which isn't subject to the CGIA's notice requirement.  Instead, the division concludes that a potential HCWPA claim is more similar to a claim under the Whistleblower Act, §§ 24-50.5-101 to -107, C.R.S. 2024, which is subject to the CGIA's notice requirement.

The division therefore affirms the district court's order dismissing the plaintiff's HCWPA claim on the basis that the plaintiff did not provide any prefiling notice of the claim.

COLORADO COURT OF APPEALS　　　　　　　　　　**2025COA47**

Court of Appeals Nos. 24CA0298 & 24CA0325
City and County of Denver District Court No. 22CV31323
Honorable Martin F. Egelhoff, Judge

Katie Bakes, MD,

Plaintiff-Appellant,

v.

Denver Health and Hospital Authority,

Defendant-Appellee.

APPEAL DISMISSED IN PART
AND ORDER AFFIRMED

Division A
Opinion by JUDGE GOMEZ
Tow and Kuhn, JJ., concur

Announced May 8, 2025

Lowrey Parady Lebsack, LLC, J. Bennett Lebsack, Ariel B. DeFazio, Denver, Colorado, for Plaintiff-Appellant

O'Hagan Meyer, PLLC, Meredith L. McDonald, Alice Conway Powers, Brian R. DeMocker, Denver, Colorado, for Defendant-Appellee

¶ 1 In this interlocutory appeal, we are asked to decide whether any claims that might be asserted under the Health Care Worker Protection Act (HCWPA), § 8-2-123, C.R.S. 2024, are subject to the notice requirement in the Colorado Governmental Immunity Act (CGIA), § 24-10-109, C.R.S. 2024. We conclude that they are. We therefore affirm the district court's order dismissing the HCWPA claim that plaintiff, Dr. Katie Bakes, asserted against defendant, Denver Health and Hospital Authority (Denver Health).

## I. Background

¶ 2 Dr. Bakes previously worked for Denver Health as an emergency room physician and as Director of PreHealth Programs. She alleges that Denver Health wrongfully terminated her from her directorship and constructively discharged her from her employment after she made a good faith report about concerns relating to patient safety or the quality of patient care — specifically, concerns about Denver Health's approach to youth violence and systemic racism's impact on Denver Health's services.

¶ 3 Dr. Bakes filed this action asserting three claims against Denver Health, including, as relevant here, a claim under the HCWPA. Denver Health filed motions under C.R.C.P. 12(b)(1) and

1

(5) and C.R.C.P. 56(h), asserting two bases for dismissal of the HCWPA claim. The district court granted the motions on both grounds. The court first concluded that the HCWPA claim is subject to the CGIA because Denver Health is a public entity (a fact that wasn't disputed) and the claim sounds in tort; therefore, the claim failed for lack of timely prefiling notice. The court also concluded that the HCWPA doesn't create a private right of action.

¶ 4 Dr. Bakes filed an interlocutory appeal of the district court's CGIA ruling under section 24-10-108, C.R.S. 2024. Uncertain whether that appeal would encompass the ruling regarding the lack of a private right of action, she also filed a petition for interlocutory appeal of that ruling under C.A.R. 4.2(b). A division of this court granted the petition and consolidated the two appeals.

## II. CGIA

¶ 5 We begin and end our review with the CGIA. Specifically, we conclude that any claims that might be asserted under the HCWPA are subject to the CGIA's notice requirement. Therefore, we affirm

2

the order of dismissal on that basis and don't address whether the HCWPA creates a private right of action.[1]

### A.    Standard of Review and Applicable Law

¶ 6    We review matters of statutory interpretation de novo. *Nieto v. Clark's Mkt., Inc.*, 2021 CO 48, ¶ 12. Our primary goal in interpreting a statute is to ascertain and give effect to the General Assembly's intent. *Elder v. Williams*, 2020 CO 88, ¶ 18. We do so by applying the plain and ordinary meanings of a statute's words and phrases; giving consistent, harmonious, and sensible effect to all of the statute's parts; and avoiding constructions that would render any words or phrases superfluous or would lead to illogical or absurd results. *Id.* Where statutory language is unambiguous, we give effect to its plain and ordinary meaning. *Burnett v. State Dep't of Nat. Res.*, 2015 CO 19, ¶ 12.

---

[1] Because we affirm the district court's order on CGIA grounds without any need to consider the issue on which the consolidated appeal was accepted under C.A.R. 4.2, we now dismiss that portion of the appeal. Not only is it moot, but it no longer satisfies the requirement that immediate review would promote a more orderly disposition or establish a final disposition of the litigation. *See* C.A.R. 4.2(b)(1).

¶ 7     The CGIA limits the potential liability of public entities for compensatory damages in tort. *City of Aspen v. Burlingame Ranch II Condo. Owners Ass'n*, 2024 CO 46, ¶ 29. Under the CGIA, absent a waiver, public entities are "immune from liability in all claims for injury that lie in tort or could lie in tort, regardless of whether that may be the type of action or the form of relief chosen by the claimant." § 24-10-106(1), C.R.S. 2024; *see also* § 24-10-108 ("sovereign immunity shall be a bar" to any such action in the absence of a waiver).

¶ 8     When a claim falls within the scope of the CGIA, the claimant must provide notice of the claim to the public entity within 182 days of discovering the injury. § 24-10-109(1). Compliance with this notice requirement is a jurisdictional prerequisite for an action against the public entity. *Id.*

¶ 9     To determine whether a claim falls within the scope of the CGIA, courts consider two primary things: (1) the nature of the injury and (2) the relief sought. *Burlingame Ranch*, ¶ 31.

¶ 10    As to the nature of the injury, "[w]hen the injury arises either out of conduct that is tortious in nature or out of the breach of a duty recognized in tort law, and when the relief seeks to

compensate the plaintiff for that injury, the claim likely lies in tort or could lie in tort for purposes of the CGIA." *Elder*, ¶ 22 (quoting *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1003 (Colo. 2008)); *accord Bd. of Cnty. Comm'rs v. Colo. Dep't of Pub. Health & Env't*, 2021 CO 43, ¶ 38. Thus, the CGIA encompasses claims "arising from the breach of a general duty of care, as distinguished from contractual relations or a distinctly non-tortious statutorily-imposed duty." *Elder*, ¶ 22 (quoting *Colo. Dep't of Transp. v. Brown Grp. Retail, Inc.*, 182 P.3d 687, 691 (Colo. 2008)).

¶ 11     As to the relief sought, while "the nature of the relief requested is not dispositive as to whether a claim lies in tort," it "may inform [a court's] understanding of the nature of the injury and the duty allegedly breached." *Id.* at ¶ 23; *accord Bd. of Cnty. Comm'rs*, ¶ 39. "This is particularly true in the case of a statutory claim without origins in common law in which, for example, the legislature intended to address constitutionally based concerns of equality rather than compensation for personal injuries." *Elder*, ¶ 23; *see also Brown Grp. Retail*, 182 P.3d at 690 ("[W]e have distinguished some statutorily created duties, despite their general and non-

contractual nature, on the basis of their broad policy rather than compensatory goals . . . .").

¶ 12    Because the CGIA is in derogation of the common law, we must strictly construe its immunity provisions. *See Elder*, ¶ 20.

        B.    Application of the CGIA to a Potential HCWPA Claim

¶ 13    The HCWPA prohibits a health care provider from "tak[ing] disciplinary action against a health-care worker in retaliation for making a good faith report or disclosure" regarding patient safety information or the quality of patient care. § 8-2-123(2)(a); *see also* § 8-2-123(1)(b).

¶ 14    The parties dispute whether any claims that might be asserted under this statute are more akin to claims under the Whistleblower Act, §§ 24-50.5-101 to -107, C.R.S. 2024 — which are subject to the CGIA's notice requirement — or claims under the employment practices provisions of the Colorado Anti-Discrimination Act (CADA), §§ 24-34-400.2 to -408, C.R.S. 2024 — which are not.

¶ 15    The Whistleblower Act generally prohibits an appointing authority or supervisor from "initiat[ing] or administer[ing] any disciplinary action against [a state] employee on account of the employee's disclosure of information" about an action, policy,

6

regulation, practice, or procedure, including but not limited to the waste of public funds, abuse of authority, or mismanagement of a state agency. § 24-50.5-103, C.R.S. 2024; *see also* § 24-50.5-102(2)-(3), C.R.S. 2024. A state employee who believes they were subjected to discipline in violation of this act may pursue administrative charges and, if unsuccessful, may bring civil claims in district court. §§ 24-50.5-104, -105, C.R.S. 2024.

¶ 16     The supreme court recognized in *State Personnel Board v. Lloyd* that, in enacting the Whistleblower Act, "the General Assembly created a noncontractual, statutory action for retaliatory discharge that is tortious in nature." 752 P.2d 559, 563 (Colo. 1988). "Because section 24-50.5-103 is a statutory tort," the court held, "the expressed intent of the General Assembly requires that actions under the statute be subject to the [CGIA's] notice of claim provision." *Id.*; *see also Conde v. Colo. State Dep't of Pers.*, 872 P.2d 1381, 1384 (Colo. App. 1994) ("Because the [Whistleblower Act] was intended to create a non-contractual, statutory action which is tortious in nature, a claim brought under that statute is subject to the notice requirements of the [CGIA]."); *Sussman v. Univ. of Colo. Health Scis. Ctr.*, 706 P.2d 443, 444-45 (Colo. App. 1985) (a claim

for wrongful termination in retaliation for filing a worker's compensation claim sounded in tort and, thus, was subject to the CGIA's notice requirement).

¶ 17    By contrast, CADA prohibits an employer from, among other things, taking adverse action against a qualified employee because of their disability, race, creed, color, sex, sexual orientation, gender identity, gender expression, marital status, religion, age, national origin, or ancestry and discriminating against anyone who has opposed such an action.  § 24-34-402(1)(a)(I), (e)(IV), C.R.S. 2024.

¶ 18    The supreme court held in *Elder* that claims under CADA do not and cannot lie in tort and, thus, are not subject to the CGIA. *Elder*, ¶ 27.  The court reasoned that CADA doesn't have origins in the common law and that claims under CADA don't arise from the breach of a general duty of care.  *Id.* at ¶ 24.  Instead, the court explained, the General Assembly adopted CADA's anti-discrimination provisions to "fulfill the 'basic responsibility of government to redress discriminatory employment practices on the basis of race, creed, color, sex, age, national origin, or ancestry.'" *Id.* (quoting *City of Colorado Springs v. Conners*, 993 P.2d 1167, 1174 (Colo. 2000)).  The court also explained that CADA was "not

8

designed primarily to compensate individual claimants but rather to eliminate discriminatory practices as defined by [the statute]." *Id.* (quoting *Conners*, 993 P.2d at 1174). "As a result, any benefits to an individual claimant resulting from a claim under CADA . . . are 'merely incidental' to th[e] [statute's] greater purposes of eliminating workplace discrimination." *Id.* (quoting *Brooke v. Rest. Servs., Inc.*, 906 P.2d 66, 71 (Colo. 1995)); *see also Conners*, 993 P.2d at 1173-74 (claims under the predecessor statute to CADA aren't subject to the CGIA).

¶ 19    We conclude that any claims that might arise under the HCWPA more closely resemble claims under the Whistleblower Act than those under CADA and, therefore, that any such claims are subject to the CGIA's notice requirement. Fundamentally, the HCWPA and the Whistleblower Act both protect whistleblowers who make good faith disclosures by prohibiting their employers from disciplining them in retaliation for such disclosures. *See* § 8-2-123(2)(a); § 24-50.5-103(1). CADA serves a different purpose by prohibiting employment discrimination on the basis of certain protected characteristics and prohibiting retaliation for opposing such discrimination. *See* § 24-34-402(1)(a)(I), (e)(IV).

¶ 20     Dr. Bakes makes three primary comparisons between the statutes in arguing otherwise.  We reject all three.

¶ 21     First, Dr. Bakes argues that, like claims under CADA, any claims that might arise under the HCWPA wouldn't have origins in the common law and wouldn't arise from the breach of any general duty of care.  She points out that, shortly before the statute was enacted, a division of this court held that a nurse allegedly terminated from a hospital for advocating on behalf of a patient and reporting a concern about the patient's treatment had no cognizable claim for wrongful discharge in violation of public policy because no clearly expressed public policy was at stake.  *Jaynes v. Centura Health Corp.*, 148 P.3d 241, 243-47 (Colo. App. 2006).

¶ 22     But whistleblower claims like those that might arise under the HCWPA do have some basis in the common law.  Colorado courts have long recognized common law claims for wrongful discharge in violation of public policy — and those are tort claims subject to the CGIA.  *See Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 108-10 (Colo. 1992); *Holland v. Bd. of Cnty. Comm'rs*, 883 P.2d 500, 508 (Colo. App. 1994).  While the division in *Jaynes* may not have found a sufficiently expressed public policy to support such a claim in

10

that case, 148 P.3d at 243-47, the HCWPA's legislative declaration seems to be directed at filling that void. The declaration states that "[i]t is a violation of public policy in the state of Colorado for a health care worker to be fired or penalized for fulfilling [their] professional obligations" and pronounces a legislative "obligation" to "remedy the existing silence in state law and create a framework for health care employers and employees to protect patients, safeguard professional obligations, and maintain the standards that employers and health care workers need to deliver quality health care to Colorado citizens." Ch. 67, secs. 1(c), (2), 2007 Colo. Sess. Laws 283-84. Thus, the HCWPA may have expanded upon the common law, but it still has underpinnings in that common law, much like the Whistleblower Act but unlike CADA.

¶ 23    Second, Dr. Bakes argues that, like CADA, the HCWPA fulfills broader legislative policies — in this case, promoting patient safety and the quality of patient care. She cites the HCWPA's legislative declaration, which provides, in part, that "[p]atient safety is of paramount importance in the delivery of health care to Colorado citizens"; "[a] patient is at [their] safest when a health care worker has the right to speak out on the patient's behalf without fear of

reprisal or retaliation"; and "[h]ealth care providers recognize that, in order to deliver the highest quality health care, it is imperative that all health care workers have the right to report patient safety concerns and to advocate for a patient's well being without the risk of disciplinary action or loss of employment." Sec. 1(a), 2007 Colo. Sess. Laws at 283.

¶ 24 But unlike CADA — which was enacted to "address constitutionally based concerns of equality" and "fulfill the 'basic responsibility of government to redress discriminatory employment practices,'" *Elder*, ¶¶ 23-24 (quoting *Conners*, 993 P.2d at 1174) — the HCWPA doesn't implicate broad constitutional concerns or basic responsibilities of government. Although the HCWPA addresses important state policies, so, too, do other statutes that fall within the CGIA's purview. For instance, the Whistleblower Act addresses the General Assembly's stated concerns that "the people of Colorado are entitled to information about the workings of state government in order to reduce the waste and mismanagement of public funds, to reduce abuses in government authority, and to prevent illegal and unethical practices" and "employees of the state of Colorado are citizens first and have a right and a responsibility to behave as good

citizens in our common efforts to provide sound management of governmental affairs." § 24-50.5-101(1).

¶ 25 Third, Dr. Bakes argues that, like the remedies available under CADA, any remedies available under the HCWPA would be "'merely incidental' to th[e] [statute's] greater purposes." *Elder*, ¶ 24 (quoting *Brooke*, 906 P.2d at 71). So, while Dr. Bakes seeks to recover damages for lost wages, loss of earning potential, pain and suffering, emotional distress, and other harms she allegedly suffered as a result of the alleged HCWPA violation, she contends that any such recovery wouldn't undermine the primary legislative purposes of promoting patient safety and the quality of patient care.

¶ 26 But it's not clear that a health care worker's recovery of damages under the HCWPA would be merely incidental to concerns relating to patient safety and quality patient care. As part of its reasoning in *Elder*, the supreme court noted that damages under CADA are capped based on the size of the employer and the egregiousness of the conduct, rather than based on the claimant's injury, and that the prevailing plaintiff attorney fee provision in CADA effectively allows claimants to act as private attorneys general vindicating the rights secured by the statute. *Elder*, ¶¶ 25-26; *see*

13

*also* § 24-34-405(3)(d), (5), C.R.S. 2024.  There are no comparable provisions in the HCWPA; nor are there any other provisions that might suggest that any recovery by an individual worker would merely be incidental to the statute's broader policy goals.

¶ 27     Accordingly, we conclude that any claim that may be asserted under the HCWPA lies or could lie in tort and therefore is subject to the CGIA's notice requirement.  And because it is undisputed that Dr. Bakes didn't provide any prefiling notice of her HCWPA claim, that claim is barred under the CGIA.  *See* § 24-10-109(1); *Lloyd*, 752 P.2d at 565.

## III.    Disposition

¶ 28     The appeal is dismissed in part, and the order is affirmed.

JUDGE TOW and JUDGE KUHN concur.

14