2015 COA 19

**FIRST NATIONAL BANK OF DURANGO, Mancos Valley Bank, Citizens Bank of Pagosa Springs, and Farmers Savings Bank, Plaintiffs–Appellees,**

v.

**William S. LYONS, Jr., and William S. Lyons, III, Defendants–Appellants.**

**Court of Appeals No. 13CA1907**

Colorado Court of Appeals,
Div. VII.

Announced February 26, 2015

Newbold Chapman & Geyer PC, A. Michael Chapman, R. Thomas Geyer, Durango, Colorado; Law Firm of Ice Miller, LLP, Philip A. Whistler, Aaron D. Grant, Indianapolis, Indiana, for Plaintiffs–Appellees.

Fowler, Schimberg & Flanagan P.C., Timothy P. Schimberg, Andrew R. McLetchie, Denver, Colorado, for Defendants–Appellants.

Opinion by JUDGE BERGER

¶ 1 In this securities fraud action, the district court denied the motion of defendants, Williams S. Lyons, Jr., and Williams S. Lyons, III (collectively, Lyons), to dismiss for lack of subject matter jurisdiction. The Lyons contended that claims against them under the Colorado Securities Act (CSA) were subject to the Colorado Governmental Immunity Act (CGIA) and therefore barred because the plaintiffs, First National Bank of Durango, Mancos Valley Bank, Citizens Bank of Pagosa Springs, and Farmers Savings Bank (Banks), did not give timely notice under the CGIA. The district court held that the CGIA does not apply to claims under the CSA and denied the motion. The Lyons appeal that denial, pursuant to section 24–10–118(2.5), C.R.S. 2014.

¶ 2 Under controlling authority, the dispositive question on appeal is whether the Banks' CSA claims against the Lyons lie in tort or could lie in tort. Because we conclude that the Banks' CSA claims lie in tort or could lie in tort for purposes of the CGIA, we reverse and remand for further proceedings on the motion to dismiss.

I. Relevant Facts and Procedural History

¶ 3 The Lyons, along with other members of their family and a business associate, comprised the Board of Directors of Lincoln Creek Metropolitan District (the District). The District is a statutory special district formed to provide public facilities to Lincoln Creek Village, a proposed residential community in Douglas County. The Lyons' company, LCV, LLC, owned almost all of the property in the District and was the developer of Lincoln Creek Village.

¶ 4 In March 2006, the Banks purchased $4.13 million of General Obligation Tax Bonds issued by the District to partially fund construction of Lincoln Creek Village. Additional financing for the project was provided by a separate development loan. In July 2008, the bank that held the deed of trust securing the development loan foreclosed on the encumbered Lincoln Creek Village property. Several months later, the Banks filed the action underlying this appeal against the Lyons; LCV; and Stifel, Nicolaus & Company, Inc., the underwriter of the bonds. The Banks did not sue the District, the issuer of the bonds.

¶ 5 The Banks alleged that, in connection with the offer and sale of the bonds (which all parties agree for purposes of this appeal are securities under the CSA), the defendants misrepresented and omitted material facts, mostly in the official offering statements issued by the District in connection with the sale of the bonds. The District issued two offering statements, the Preliminary Limited Offering Memorandum and the

Limited Offering Memorandum. Both were signed by William S. Lyons, III, as President of the Board of Directors of the District.

¶ 6 The Banks alleged in their complaint that the offer and sale of the bonds violated section 11–51–501(1), C.R.S. 2014, of the CSA because the defendants, "recklessly, knowingly, or with an intent to defraud the [Banks],"

(a) employed devices, schemes or artifices to defraud the [Banks], (b) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and (c) engaged in acts, practices, and courses of business that operated or would operate as a fraud or deceit upon [the Banks].

The Banks sought to recover, upon the tender of the bonds, the consideration paid less the amount of any income received (plus interest, costs, and attorney fees) pursuant to the CSA, subsections 11–51–604(3), (4), and (5), C.R.S. 2014.[1]

¶ 7 The Lyons asserted the defense of governmental immunity and filed a C.R.C.P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. In their motion, the Lyons argued that the claims against them had to be dismissed because the Banks had failed to provide notice of the claims to the District, a jurisdictional prerequisite under the CGIA. The district court denied the motion to dismiss, concluding that CSA claims do not sound in tort and thus the CGIA does not apply and statutory notice was not required.

¶ 8 The Lyons filed this interlocutory appeal. The parties' arguments focus on whether (1) the Banks' CSA claims against the Lyons lie in tort or could lie in tort and (2) the acts or omissions on which the claims are based occurred during the performance of the Lyons' duties for, and within the scope of their employment with, the District.

## II. Colorado Governmental Immunity Act—Law and Analysis

¶ 9 We review de novo the district court's determination that the CGIA does not apply to CSA claims. *See Medina v. State,* 35 P.3d 443, 452–53 (Colo. 2001).

¶ 10 Subject to certain exceptions not applicable here, the CGIA provides that

[a] public employee shall be immune from liability in any claim for injury, whether brought pursuant to this article, section 29–5111, C.R.S., the common law, or otherwise, which lies in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by a claimant and which arises out of an act or omission of such employee occurring during the performance of his duties and within the scope of his employment unless the act or omission causing such injury was willful and wanton.

§ 24–10–118(2)(a), C.R.S. 2014. The Lyons are public employees for purposes of the CGIA, which defines "public employee" to include officers of a "public entity," § 24–10–103(4)(a), C.R.S. 2014, and "public entity" to include "every ... kind of district" or "political subdivision" of the state "organized pursuant to law," § 24–10103(5).

¶ 11 Before bringing an action against a public employee for claims subject to the CGIA, written notice of the claims must be provided within the statutory period to the public entity where the employee is employed. §§ 24–10–118(1), 24–10–109, C.R.S. 2014. Even if the employee ultimately is not immune from suit because an exception to immunity applies or the act or omission causing the claimant's alleged injury was willful and wanton, notice still must be provided for the suit to proceed. *See id.; Middleton v. Hartman,* 45 P.3d 721, 730–31 (Colo. 2002). Because notice is a jurisdictional prerequisite to suit, failure to comply with the notice

1. In addition to the CSA claims, the Banks originally brought claims for negligent misrepresentation, common law fraud, and civil conspiracy that, according to the complaint, arose out of the very same facts as the securities fraud claims. The Banks assert in their Answer Brief that these claims were voluntarily withdrawn, as demonstrated by the district court's statement in its order denying the Lyons' motion to dismiss that "only statutory claims pursuant to the CSA remain[ed]." We are unable to locate in the record on appeal any formal withdrawal of these claims; in any event, we accept the concession that the common law claims were withdrawn.

requirement forever bars the action against the employee. § 24–10–118(1)(a); *Trinity Broad. of Denver, Inc. v. City of Westminster*, 848 P.2d 916, 923 (Colo. 1993).

¶ 12 It is undisputed that the Banks did not provide notice of their claims against the Lyons to the District. Accordingly, if the CGIA applies to those claims, the Banks' action against the Lyons must be dismissed for lack of subject matter jurisdiction, but only to the extent that the claims arise from acts or omissions that occurred in the Lyons' capacity as public employees.

### A. Whether the Claims Lie in Tort or Could Lie in Tort

 ¶ 13 Under the plain language of the CGIA, "neither the form of the claim itself nor the relief requested determines whether the claim is one which lies in tort or could lie in tort." *Foster v. Bd. of Governors of the Colo. State Univ. Sys.*, 2014 COA 18, ¶ 12, 342 P.3d 497; see also § 24–10118(2)(a); *City of Colo. Springs v. Conners*, 993 P.2d 1167, 1172 (Colo. 2000). Instead, whether the claim lies in tort or could lie in tort depends on the factual basis underlying the claim and, specifically, the nature of the alleged injury. *Colo. Dep't of Transp. v. Brown Grp. Retail, Inc.*, 182 P.3d 687, 691 (Colo. 2008); *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1005 (Colo. 2008).

¶ 14 A court must assess the nature of the injury underlying the claim to determine whether "the injury arises either out of conduct that is tortious in nature or out of the breach of a duty recognized in tort law" and whether "the relief seeks to compensate the plaintiff for that injury." *Robinson*, 179 P.3d at 1003. This must be done on a case-by-case basis "through a close examination of the pleadings and undisputed evidence." *Id.*; see also *Conners*, 993 P.2d at 1176.

¶ 15 The complaint in this case demonstrates that the injury underlying the Banks' CSA claims is tortious in nature. The essence of the Banks' claims is that they purchased the bonds in reliance on the defendants' false statements or omissions of material fact and sustained financial loss as a result of that reliance. "[T]he major thrust" of these claims is "identical" to that

of a claim for common law fraud. *Huffman v. Westmoreland Coal Co.*, 205 P.3d 501, 507 (Colo. App. 2009) (internal quotation marks omitted).

¶ 16 Colorado courts have consistently concluded that claims premised on a plaintiff's reliance on a misrepresentation of material fact by the defendant "lie in tort or could lie in tort" for purposes of the CGIA. In *Robinson*, the plaintiff brought various contractual or quasi-contractual claims based on allegations that, by selling instant scratch game tickets for a significant period of time after all the represented or advertised prizes were awarded or claimed, the Colorado State Lottery Division misrepresented to the plaintiff the possibility of winning and thereby wrongfully induced her to buy tickets. 179 P.3d at 1002–03.

¶ 17 The supreme court held that these claims "could lie in tort" because the alleged injury arose "out of the Lottery's misrepresentations regarding the availability of the represented prizes, which induced the purchase of scratch tickets." *Id.* at 1005. The supreme court thus concluded that "regardless of whether the Lottery breached any contractual duties, the essence of the injury [was] tortious in nature" and "would appear to support a tort claim." *Id.*

¶ 18 Similarly, in *Board of County Commissioners v. DeLozier*, the supreme court explained that "an equitable estoppel claim for negligent misrepresentation of facts" lies in tort for purposes of the CGIA. 917 P.2d 714, 716 (Colo. 1996). This is because equitable estoppel is based on the misrepresentation of facts, which is fundamentally a tort theory. *Berg v. State Bd. of Agric.*, 919 P.2d 254, 259 (Colo. 1996)

¶ 19 The Banks argue that the supreme court's decision in *Conners* precludes a determination that their CSA claims against the Lyons lie in tort or could lie in tort. *Conners* held that claims for reinstatement and back pay under the antidiscrimination provisions of the Colorado Civil Rights Act (CRA) are not claims for "injuries which lie in tort or could lie in tort" for purposes of the CGIA. 993 P.2d at 1173 (internal quotation marks omitted).

¶ 20 In concluding that the CGIA does not apply to claims under the CRA, *Conners* emphasized that the legislative purpose of the CRA is "to fulfill the basic responsibility of government to redress discriminatory employment practices" and thus the CRA "was not designed primarily to compensate individual claimants but rather to eliminate discriminatory practices." *Id.* at 1174 (internal quotation marks omitted). The supreme court also noted that the forms of relief authorized under the CRA, including claims for back pay, "are equitable in nature and are aimed at eliminating workplace discrimination, not compensating individuals for their particular injuries arising from violations of the CRA." *Id.* at 1175.[2]

¶ 21 The supreme court therefore concluded that actions under the CRA "are not actions seeking compensatory damages for personal injuries" but instead represent "claims best characterized as equitable and non-compensatory in nature." *Id.* at 1174. Thus, because "governmental immunity under the [CGIA] is immunity from actions seeking compensatory damages for personal injuries," the supreme court held that CRA actions "neither lie in tort nor could lie in tort for the purposes of the CGIA." *Id.* at 1173–74.

¶ 22 The Banks argue that, like *Conners*, *id.* at 1175, this case involves claims for statutory relief (rescission) that are equitable in nature, and like the CRA, the CSA aims only to restore a person injured by a violation to the status quo, through a restitutionary remedy rather than damages. But because the CGIA does not "distinguish between torts recognized at common law or by statute," it is irrelevant that both cases involve statutory claims. *State Pers. Bd. v. Lloyd*, 752 P.2d 559, 564 (Colo. 1988). Moreover, the supreme court rejected a similar contention in *Robinson* that the plaintiff's claims did not lie in tort because they were equitable in nature and not claims for "compensatory relief for personal injuries." 179 P.3d at 1006 (internal quotation marks omitted). There, the supreme court explained

that "*Conners* does not stand for the proposition that the CGIA will never bar claims for equitable relief because they are not claims for compensatory relief." *Id.*

¶ 23 Rather, "the relief requested is merely an aid in understanding the duty breached or the injury caused to determine if the claim lies or could lie in tort." *Id.* In *Conners*, because the CRA claim was not based on an action with common law roots in tort or contract, the supreme court examined the CRA's "conception of injury and remedy in order to *inform* [its] understanding of the nature of the underlying claim." *Id.* (internal quotation marks omitted; emphasis in original). Conversely, here, as in *Robinson*, the complaint describes an injury that is tortious in nature, and thus "analysis of the relief requested plays a less significant role in informing our understanding of the underlying injury." *See id.* And, as in *Robinson*, although the relief is labeled as "rescission," it is in effect the equivalent of damages the Banks could plead in tort—money expended in reliance on the defendants' misrepresentations, which induced the Banks to invest in the bonds. *See id.* at 1008.

■ ¶ 24 Additionally, the common law remedy of rescission against the Lyons is not possible. The District, not the Lyons, was the issuer of the bonds, and the Lyons were not the direct recipients of the bond proceeds because the District sold the bonds to the underwriter, which sold the bonds to the Banks. The common law remedy of rescission requires that the status quo ante be restored by the purchaser returning what it received from the seller. *Pinter v. Dahl*, 486 U.S. 622, 641 n.18, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988). Here, that would require the bonds to be cancelled and the underwriter to refund the monies paid by the Banks for the bonds. The impossibility of rescission against the Lyons is another reason why this suit is more in the nature of a suit for damages.

¶ 25 We are not persuaded otherwise by the Banks' argument that it is irrelevant that the Lyons did not directly pass title to

---

2. *Conners* was decided before the CRA was amended in 2013 to allow a plaintiff to recover, under certain circumstances, compensatory and punitive damages in addition to other authorized relief. *See* Ch. 168, sec. 1, § 24–34–405(3)(a), 2013 Colo. Sess. Laws 550.

the bonds. The Banks rely on the holding in *Pinter v. Dahl* that those potentially liable (under a virtually identical federal securities statute) for offering or selling securities are not limited to persons who pass title; rather, seller liability extends to anyone who "successfully solicits the purchase, motivated at least in part by a desire to serve his [or her] own financial interests or those of the securities owner." *Id.* at 647, 108 S.Ct. 2063. However, although "privity is not essential" for liability to attach, *id.* at 647 n. 23, 108 S.Ct. 2063, the "rescission" sought by the Banks here is not equivalent to the common law remedy in equity. *See id.* at 641 n. 18, 108 S.Ct. 2063 ("The [federal securities statute] differs significantly from the source material [the common-law (or equitable) rescission from which it was adapted]. In particular, it permits the buyer who has disposed of the security to sue for damages .... [and the] damages calculation results in what is the substantial equivalent of rescission."). Accordingly, our conclusion that the Banks are seeking damages and not equitable relief is not affected by *Pinter's* holding.

¶ 26 Thus, because "the nature of the injury underlying the ... claim arguably arises out of tortious conduct and the request for relief is effectively equivalent to the damages that [the plaintiff] could seek in tort, the claim lies in tort or could lie in tort." *Robinson,* 179 P.3d at 1008.

¶ 27 The Banks also attempt to analogize this case to *Conners* by asserting that, like the CRA, the primary purpose of the CSA is not to compensate individuals but rather to "protect investors and maintain public confidence in securities markets while avoiding unreasonable burdens on participants in capital markets." § 1151–101(2), C.R.S. 2014. This argument, like the argument regarding the relief requested, puts the cart before the horse. Because the injury clearly arises out of tortious conduct, there is no need to extensively examine the statutory scheme to determine the nature of the underlying injury. *See Robinson,* 179 P.3d at 1006.

¶ 28 Also, section 11–51–604(3) provides that "[a]ny person who recklessly, knowingly, or with an intent to defraud sells or buys a security in violation of section 11–51–501(1) ... is liable to the person buying or selling such security ... for such legal or equitable relief that the court deems appropriate, including rescission [and] *actual damages.*" (Emphasis added.) Accordingly, unlike the version of the CRA at issue in *Conners,* which did not authorize actual damages, 993 P.2d at 1174–75 nn. 15–16, the CSA specifically authorizes actual damages, thus contradicting the Banks' contention that the CSA does not aim to compensate individuals for injuries caused by CSA violations.

¶ 29 The Banks further argue that their CSA claims could not have been brought in tort because of several significant differences between a claim under the CSA and a common law tort claim. In this regard, the Banks make three related arguments that we address together because the same analysis applies to each.

¶ 30 First, relying on *Lowery v. Ford Hill Investment Co.,* 192 Colo. 125, 135, 556 P.2d 1201, 1209 (1976), the Banks argue that to establish a claim under section 11–51–501, unlike a common law negligence claim, the plaintiff need not show that the defendant was negligent. Rather, the plaintiff need only show a material misrepresentation made by the defendant in connection with the purchase or sale of a security, and at that point, the burden shifts to the defendant to show that it did not know and, in the exercise of reasonable care, could not have known of the falsity.

¶ 31 Second, the Banks assert that numerous tort principles that apply to negligence claims, such as contributory negligence and comparative fault, are absent in claims under the CSA.

¶ 32 Third, the Banks argue, and the district court concluded, that the Banks' "control person" and "aiding and abetting" claims of liability against the Lyons (under section 11–51–604(5)), alleging that they are secondarily liable for others persons' or entities' violations of section 11–51–501, have no tort counterpart.[3] Thus, according to the Banks,

---

**3.** The complaint alleges that the Lyons "(a) directly or indirectly, controlled the District or

even if their claims of primary liability against the Lyons (under section 11–51–604(3) and (4)), which allege that the Lyons directly committed violations of section 11–51–501, could lie in tort, the claims under section 11–51–604(5) could not.

¶ 33 We reject the central premise underlying all three of these arguments— that a claim does not or could not lie in tort for purposes of the CGIA if the plaintiff could not bring the same claim in tort. The supreme court has "never suggested that coverage of the [CGIA] is limited to claims that are capable of being recast as common-law torts by the party bringing the claim." *Brown Grp.*, 182 P.3d at 690–91. Rather, "the question of coverage by the [CGIA] ultimately turns on the source and nature of the [public entity's or public employee's] liability, or the nature of the duty from the breach of which liability arises." *Id.* at 690. Here, the factual allegations of the complaint reveal that the Banks' claims are premised on the defendants' liability for tortious conduct. Therefore, the mere fact that different rules apply to claims brought under the CSA versus common law tort claims is irrelevant, as is the fact that some of the claims could not be presented as traditional common law tort claims. *See id.* at 691.

¶ 34 Regarding the Banks' argument that their CSA claims could not lie in tort because it is not necessary to demonstrate that the defendant was negligent in making misrepresentations or omissions of material fact to establish a CSA fraud claim, the statute and the Banks' own pleadings rebut this contention. It is true that section 11–51–501(1) does not require proof of negligence. However, section 11–51–604(3), which provides that a defendant who sells a security in violation of section 11–51–501(1) is liable to the purchaser for "such legal or equitable relief that the court deems appropriate," requires proof that the defendant acted "recklessly, knowingly, or with an intent to defraud." And the Banks alleged in the complaint that the defendants' violations of section 11–51–

501(1) were committed "recklessly, knowingly, or with an intent to defraud."

¶ 35 But even if the Banks did not have to show that the defendants made material misrepresentations or omissions "recklessly, knowingly, or with an intent to defraud" (and thus at least negligently) to succeed on their claims, the outcome would likely be the same. First, the Banks' arguments appear to assume that negligence claims are the only type of tort claims. But many other types of torts exist, including misrepresentation. *See, e.g., Restatement (Second) of Torts §§ 525–552* (1977). Moreover, the relevant inquiry under the CGIA is not whether the claim includes every element of a specific tort but rather "whether the injury arose out of tortious conduct or the breach of a duty arising in tort." *Robinson*, 179 P.3d at 1005. "[T]here is a recognized common law duty in tort to refrain from deliberate concealment or misrepresentations of material facts." *Top Rail Ranch Estates, LLC v. Walker*, 2014 COA 9, ¶ 36, 327 P.3d 321; *see also Robinson*, 179 P.3d at 1005 ("[A] claim that is supported by allegations of misrepresentations or fraud is likely a claim that could lie in tort" for purposes of the CGIA.).

¶ 36 Similarly, the Banks' contention that tort law does not subject a defendant to liability based solely on a position of "control" over a tortfeasor is incorrect. Rather, in an action against an employer for the torts of its employees, the employer's liability under the doctrine of respondeat superior is not based on the employer's own negligent acts but rather on the employer's vicarious liability for acts taken by the employee within the scope of his or her employment. *Raleigh v. Performance Plumbing & Heating*, 130 P.3d 1011, 1019 (Colo. 2006). This type of action sounds in tort. *USAA v. Parker*, 200 P.3d 350, 360 n. 13 (Colo. 2009).

¶ 37 We therefore reject the Banks' arguments that their CSA claims could not lie in tort for purposes of the CGIA because the

---

another person or entity [i.e. LCV] who offered or sold the Bonds to the [Banks] at the time of such offers and sale ["control persons" liability], or (b) knew at the time of the offer and sales of the Bonds to the [Banks] that another person or

entity [i.e., the District or LCV] who offered or sold the Bonds to the [Banks] was engaged in conduct that violated Colo. Rev. Stat. § 1151–501(1) and gave substantial assistance to such conduct ["aiding and abetting" liability]."

claims are different from, and could not be brought as, common law tort claims.

¶ 38 Lastly, the Banks argue that the district court was correct to follow authority from federal and other state courts holding that claims under statutes essentially identical to section 11–51–604 (including section 12(2) of the federal Securities Act of 1933, 15 U.S.C. § 77*l*(a) (2012)), are not based in tort. The Banks emphasize that "insofar as the provisions and purposes of [the CSA] parallel those of the federal enactments, such federal authorities are highly persuasive." *Lowery,* 192 Colo. at 129–30, 556 P.2d at 1204; *see also* § 11–51–101(3).

¶ 39 The only case the district court and the Banks cited that actually discusses statutory securities fraud claims in the context of governmental immunity addresses "the judicially created doctrine of tort immunity for municipalities." *Woods v. Homes & Structures of Pittsburg, Kan., Inc.,* 489 F.Supp. 1270, 1296 (D. Kan. 1980). It therefore provides limited guidance in determining the applicability of a statutory governmental immunity scheme to claims under a state securities statute.

¶ 40 The other out-of-state cases the Banks cite for the proposition that a claim under section 12(2) (or an equivalent state statute) is not a tort claim do not address governmental immunity but rather consider other issues that entail determining whether a statutory securities fraud claim is a tort. *See, e.g., Baker, Watts & Co. v. Miles & Stockbridge,* 95 Md.App. 145, 620 A.2d 356, 377 (1993) (because a party's liability under section 12(2) and a similar Maryland securities statute is not grounded in tort law, the party cannot avail itself of the right to contribution provided for joint tortfeasors). However, even were we to agree with the Banks that section 11–51–604 is sufficiently analogous to section 12(2) to render out-of-state authorities "highly persuasive" in interpreting section 11–51–604 and thus conclude that a section 11–51–604 claim is not a tort claim, this conclusion would not govern the issue of whether the Banks' CSA claims lie in tort or could lie in tort for purposes of the CGIA. As noted above, whether the claims are considered "statutory tort claims" is not deter-minative. Instead, the dispositive inquiry, which we have answered affirmatively, is whether the allegations underlying the claims show that the alleged injury arose out of tortious conduct or the breach of a duty recognized in tort law. *See Robinson,* 179 P.3d at 1003.

¶ 41 For all of these reasons, we conclude that the Banks' CSA claims against the Lyons lie in tort or could lie in tort for purposes of the CGIA.

B. Whether the Act or Omission Occurred During the Performance of the Employees' Duties and Within the Scope of Their Employment

¶ 42 As discussed above, statutory notice is a jurisdictional prerequisite to an action under the CGIA. *Trinity Broad.,* 848 P.2d at 923. Any person claiming to have suffered an injury "sustained from an act or omission of [a public] employee which occurred or is alleged in the complaint to have occurred during the performance of his [or her] duties and within the scope of his [or her] employment," whether or not by a willful and wanton act or omission, must file written notice with the public entity that employs the employee within the statutory period. §§ 24–10–118(1); 24–10–109(1).

¶ 43 The Banks assert that the misrepresentations were made by the Lyons in their capacity as private developers, and not within the scope of any "public employment" with the District. They thus argue that even if we conclude that their CSA claims lie in tort or could lie in tort, the CGIA's notice requirement does not apply because the claims against the Lyons are for conduct outside the scope of their public employment.

¶ 44 Conversely, the Lyons contend that notice is required under the CGIA whether or not the claim is based on conduct committed by the public employee within the scope of his or her employment. The statute provides otherwise. Section 24–10–118(1) expressly provides that an action against a public employee is subject to the CGIA's notice requirement when the action lies in tort or could lie in tort and "arises out of injuries sustained from an act or omission of

such employee *which occurred or is alleged in the complaint to have occurred during the performance of his [or her] duties and within the scope of his [or her] employment.*" (Emphasis added.)

¶ 45 The Lyons argue that *Middleton v. Hartman* supports the proposition that notice is required anytime a party intends to assert a claim against a public employee, regardless of whether the claim arises out of acts or omissions that occurred during the performance of his or her duties and within the scope of his or her employment. But *Middleton* is inapposite. *Middleton* held that the CGIA's notice-of-claim provisions apply, and thus require notice, in a suit against a public employee in which the plaintiff seeks to hold the employee liable in his or her individual capacity for willful and wanton conduct. 45 P.3d at 730–31. *Middleton* does not address the question presented here—whether the notice requirement applies in actions alleging that the employee's acts or omissions occurred outside the scope of his or her employment—which is a distinct inquiry from whether the employee acted willfully and wantonly. *Gallagher v. Bd. of Trs. for Univ. of N. Colo.*, 54 P.3d 386, 395 (Colo. 2002).

¶ 46 The Lyons assert that even if notice is required only in actions alleging that an employee's acts or omissions occurred within the scope of his or her employment, we should nevertheless not decide whether the Banks' claims fall into this category because the only issue decided by the district court is whether the Banks' CSA claims lie or could lie in tort. Because we agree that this issue is, at least in part, a question of fact that must be decided by the district court in the first instance, we remand for the court to decide whether the claims against the Lyons are based on acts or omissions that occurred within the scope of their public employment or acts or omissions that occurred outside of it. *See id.*

¶ 47 On remand, the district court must determine whether the acts or omissions that caused the Banks' alleged injuries "occurred or [are] alleged in the complaint to have occurred during the performance of [the Lyons'] duties and within the scope of [their] employment" with the District. *See* § 24–10–118(1). The determination of whether an act of an employee "occurred within the scope of employment depends on an examination of the totality of the circumstances." *Podboy v. Fraternal Order of Police*, 94 P.3d 1226, 1230 (Colo. App. 2004). An act occurs within the scope of employment if it is "necessarily incidental to the employment," with the "central inquiry [being] whether the employee is engaged in an activity that bears some relationship to the employer's business." *Gallagher v. Bd. of Trs. for Univ. of N. Colo.*, 18 P.3d 837, 843 (Colo. App. 2002), *rev'd in part on other grounds by Gallagher*, 54 P.3d 386. An act also is within the scope of employment if it occurs pursuant to work the employee does that is "assigned to him [or her] by his [or her] employer ... or is customary in the employer's business." *Podboy*, 94 P.3d at 1230.

¶ 48 The court must dismiss, for lack of subject matter jurisdiction, the Banks' claims against the Lyons to the extent that it finds that those claims are based on misrepresentations made or alleged in the complaint to have been made by the Lyons during the performance of their duties as directors and officers of the District and within the scope of their employment with the District.

¶ 49 However, to the extent that the court finds that any claims against the Lyons are premised on misrepresentations made by the Lyons in their capacity as private developers of the project, and thus outside the scope of their employment with the District, the CGIA does not apply to those claims and statutory notice was not required. The purpose of granting immunity to public employees is to ensure that they are not "discouraged from providing the [essential public] services or functions required by the citizens or from exercising the powers authorized or required by law." § 24–10102, C.R.S. 2014. Because conduct occurring outside the scope of an employee's public employment does not implicate this concern, the Lyons are not protected by the CGIA for acts performed in their capacity as private developers. Accordingly, the court has subject matter jurisdiction over the Banks' claims against the

Lyons to the extent that they are based on misstatements or omissions made in performance of the Lyons' duties as private developers and outside the scope of their employment with the District.

### III. Conclusion

¶ 50 The district court's order denying the Lyons' motion to dismiss for lack of subject matter jurisdiction is reversed, and the case is remanded for further proceedings.

JUDGE LICHTENSTEIN and JUDGE NAVARRO concur.