COLORADO COURT OF APPEALS          **2017COA69**

Court of Appeals No. 16CA0861
Douglas County District Court No. 15CV31017
Honorable Paul A. King, Judge

Tallman Gulch Metropolitan District,

Plaintiff-Appellee,

v.

Natureview Development, LLC and Michael Richardson,

Defendants-Appellants.

ORDER AFFIRMED

Division V
Opinion by JUDGE BOORAS
Román and Márquez*, JJ., concur

Announced May 18, 2017

Kutak Rock LLP, Reid A. Page, Denver, Colorado, for Plaintiff-Appellee

Senter Goldfarb & Rice, LLC, Eric M. Ziporin, Ryan F. McGrath, Denver, Colorado; Sherman Howard LLC, Joseph J. Bronesky, Denver, Colorado, for Defendants-Appellants

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2016.

¶ 1     Defendants, Natureview Development, LLC and Michael Richardson, appeal the district court's order holding that the Colorado Governmental Immunity Act did not apply to the claims of plaintiff, Tallman Gulch Metropolitan District, against Richardson. We affirm.

## I.     Background

¶ 2     Richardson, owner of Natureview Development (Natureview), platted and developed Tallman Gulch, a real estate development in Douglas County.  In 2006, the Tallman Gulch Metropolitan District (the District) was formed to provide public improvements and services to its residents and taxpayers.  Metropolitan districts may impose and collect taxes upon properties within their boundaries to collectively pay for their authorized services.  Richardson was the president of the District's Board of Directors (Board).

¶ 3     Upon its formation, the District submitted a service plan to Douglas County.  The plan included details of the improvements and services the District planned to provide and financial assumptions regarding expected costs and the expected revenues that would fund the costs:

- the District was to provide (1) street and traffic safety improvements; (2) storm sewers; (3) water and sanitation distribution; and (4) landscaping and parks and recreation;

- the total cost of anticipated improvements was approximated at $6,053,350;

- the District was authorized to issue up to $6,000,000 in bonded indebtedness; and

- the financial plan forecasted sales of eighty-six lots between 2007 and 2013, which would provide revenue with which the District could repay the bonds.

¶ 4    Natureview and Richardson borrowed approximately $8,600,000 from Community Banks of Colorado (CBC) to build out the public infrastructure in Tallman Gulch. Tallman Gulch, its improvements, and any rents received from Tallman Gulch, served as collateral for the loan.

¶ 5    Sales in Tallman Gulch did not meet the expectations set forth in the service plan; only four out of the anticipated eighty-six lots were sold between 2007 and 2011. In 2009, Natureview completely drew down its construction loan but only constructed one-third of

the public infrastructure for the neighborhood.  Richardson (as president of the District's Board) sent himself (as manager of Natureview) a letter purporting to accept nearly four million dollars of improvements on behalf of the District, attaching a "Bill of Sale" for landscaping signed by Richardson as manager of Natureview.

¶ 6     Natureview assigned the construction loan to another Richardson-related entity in 2009, which then defaulted on the loan in 2010.  In 2011, CBC initiated foreclosure proceedings.  On May 2, 2011, the then loan holder filed a motion to authorize the public trustee sale of Tallman Gulch.  Despite being aware of the foreclosure proceedings, on May 23, 2011, Richardson, acting as president of the District's Board, signed off on the issuance of $4,214,000 in bonds to Natureview in exchange for the then-existing infrastructure improvements in Tallman Gulch.  Ten days after the bonds were issued, the district court authorized the public trustee sale of Tallman Gulch.  Tallman Gulch was sold on July 6, 2011.

¶ 7     The District alleges that Richardson and Natureview did not disclose prior to the issuance of the bonds the financial status, the failure to meet sales expectations, the pending foreclosure, and the

conflict of interest presented by Richardson's involvement on both sides of the bond transaction. The District asserted the following claims against both Richardson and Natureview:

(1) securities fraud;

(2) negligent misrepresentation;

(3) false representation; and

(4) fraudulent concealment.

The District claimed breach of fiduciary duty against Richardson, and it claimed unjust enrichment against Natureview. Finally, the District sought a declaratory judgment reducing the value of the bonds and interpreting the bonds.

¶ 8 Defendants moved to dismiss the District's claims on various grounds. As relevant here, defendants argued that the district court lacked subject matter jurisdiction over the claims against Richardson under C.R.C.P. 12(b)(1). Defendants asserted the claims were based on Richardson's actions as an officer of the District, and were thus barred by the Colorado Governmental Immunity Act (CGIA), sections 24-10-101 through -120, C.R.S. 2016.

¶ 9    The district court denied defendants' motion to dismiss the District's claims.  Specifically, the district court concluded that the CGIA did not apply to the claims of the District, itself a public entity, against Richardson, but even if the CGIA applied to this type of litigation, Richardson's actions underlying the District's claims were outside the scope of his employment with the District, and the CGIA would not apply to those claims.  Defendants now appeal. *See* § 24-10-108, C.R.S. 2016 (the district court's decision on sovereign immunity is a final judgment subject to interlocutory appeal).

## II.    Analysis

¶ 10    Defendants contend that the district court erred when it concluded that the CGIA did not apply to the District's claims against Richardson.  We agree with the district court that the CGIA does not apply here.

### A.    Standard of Review and Principles of Statutory Construction

¶ 11    "Determining whether there is immunity under the CGIA is a question of subject matter jurisdiction to be decided pursuant to C.R.C.P. 12(b)(1).  We review a district court's interpretation of the CGIA de novo."  *Denver Health & Hosp. Auth. v. City of Arvada ex*

5

*rel. Arvada Police Dep't*, 2016 COA 12, ¶ 38 (citation omitted) (*cert. granted* Sept. 12, 2016); *see also Munoz v. Am. Family Mut. Ins. Co.*, 2017 COA 25, ¶ 7 (we review issues of statutory construction de novo). In interpreting a statute, our primary objective is to ascertain and effectuate the intent of the General Assembly. *Specialty Rests. Corp. v. Nelson*, 231 P.3d 393, 397 (Colo. 2010); *Munoz*, ¶ 8. "If the statutory language is clear, we interpret the statute according to its plain and ordinary meaning." *Specialty Rests. Corp.*, 231 P.3d at 397. We read words and phrases in context and construe them according to their common usages. *Jefferson Cty. Bd. of Equalization v. Gerganoff*, 241 P.3d 932, 935 (Colo. 2010).

¶ 12     "We also interpret a statute in a way that best effectuates the purpose of the legislative scheme." *Perfect Place v. Semler*, 2016 COA 152M, ¶ 20. "When a court construes a statute, it should read and consider the statute as a whole and interpret it in a manner giving consistent, harmonious, and sensible effect to all of its parts." *Gagne v. Gagne*, 2014 COA 127, ¶ 26. "In doing so, a court should not interpret the statute so as to render any part of it either

meaningless or absurd." *Id.* If a statute is unambiguous, we look no further. *Id.* at ¶ 27.

### B.    Colorado Governmental Immunity Act

¶ 13    "Before 1971, public entities enjoyed common-law sovereign immunity from suit and were liable for compensatory damages for injuries in tort only when constitutional or statutory provisions operated to waive the government's immunity." *City of Colorado Springs v. Conners*, 993 P.2d 1167, 1171 (Colo. 2000). In 1971, the supreme court decided three cases that abrogated Colorado's common law of governmental immunity. *See Springer v. City & Cty. of Denver*, 13 P.3d 794, 798 (Colo. 2000). The supreme court noted that, in reaching these decisions, it wished to leave the decision of whether to restore governmental immunity in whole or in part to the General Assembly. *Evans v. Bd. of Cty. Comm'rs*, 174 Colo. 97, 105, 482 P.2d 968, 972 (1971), *superseded by statute*, Colorado Governmental Immunity Act, Ch. 323, sec. 1, §§ 130-11-1 to -17, 1971 Colo. Sess. Laws 1204-11.

¶ 14    In 1971, the legislature adopted the CGIA, providing sovereign immunity for public entities in tort actions (or actions that could lie in tort), absent one of the enumerated exceptions. 1971 Colo. Sess.

7

Laws at 1204-11; *Conners*, 993 P.2d at 1171-72. The legislature described the doctrine of sovereign immunity "whereunder the state and its political subdivisions are often immune from suit for injury suffered by private persons" as sometimes inequitable. § 24-10-102, C.R.S. 2016. It later declared that a central purpose of the CGIA is to limit the potential liability of public entities for compensatory money damages in tort, because "unlimited liability could disrupt or make prohibitively expensive the provision of . . . essential public services and functions." Ch. 166, sec. 1, § 24-10-102, 1986 Colo. Sess. Laws 873. "This form of liability places a burden upon taxpayers, who ultimately face the 'fiscal burdens of unlimited liability' incurred by the state in tort suits." *Conners*, 993 P.2d at 1172 (quoting § 24-10-102).

¶ 15    The CGIA establishes sovereign immunity for public entities. Further, it extends to public employees in limited circumstances in tort actions:

> It is the intent of this article to cover all actions which lie in tort or could lie in tort . . . . No public entity shall be liable for such actions except as provided in this article, and no public employee shall be liable for injuries arising out of an act or omission occurring during the performance of his or her duties

and within the scope of his or her employment, unless such act or omission was willful and wanton . . . .

§ 24-10-105(1), C.R.S. 2016; *see also* § 24-10-106(1), C.R.S. 2016.

¶ 16    Because the CGIA derogates the common law, we construe its grants of immunity strictly.  *See, e.g.*, *Burnett v. State Dep't of Nat. Res.*, 2015 CO 19, ¶ 11.

## C.    Analysis

¶ 17    Richardson was a public employee for the purpose of the CGIA, as an officer of a public entity, the District.  *First Nat'l Bank of Durango v. Lyons*, 2015 COA 19, ¶ 9; *see* § 24-10-103(4)(a), (5), C.R.S. 2016.  He argues that as a public employee he was immune under the CGIA with regard to the District's tort claims against him. We disagree.

¶ 18    In the present litigation, the District, the public entity that employed Richardson, sued him for his malfeasance while in its employ.

¶ 19    The plain language of sections 24-10-105 and -106 is unambiguous in its contemplation of the immunity of the public entity, or public employee as an extension of the entity, when called upon to *defend* against tort claims raised.  However, these sections

9

of the statute are silent as to the application of the CGIA to suits brought by a public entity plaintiff, and thus the scope of the statute is ambiguous. *See People v. Paloma*, 272 P.3d 1106, 1112 (Colo. App. 2011) (where a statute is silent on and does not appear to contemplate the issue presented, the silence renders it ambiguous as to scope).

¶ 20 Construing the CGIA as a whole, and interpreting it in a manner that gives consistent, harmonious, and sensible effect to all of its parts, we look to the statement of policy contained within section 24-10-102. The legislature describes sovereign immunity as a concept that arises when a public entity is being sued for "injury suffered *by private persons*." § 24-10-102 (emphasis added). In this case, however, injury was suffered by a public entity.

¶ 21 In our view, where a public entity, as plaintiff, asserts injuries caused by one of its employees, it would frustrate the purpose of the CGIA to permit the employee to shield himself or herself with the sovereign immunity meant to protect a public entity, and a public employee only when acting as an extension of the entity. The statute clearly states that the purpose of the CGIA is to limit the liability of public entities in defending against tort claims, and thus

10

to lessen the burden on taxpayers who provide funding for public entities.

¶ 22    In the present case, the District is alleging that it suffered an injury when it issued over four million dollars in bonds to Natureview and Richardson despite Tallman Gulch's foreclosure status.  Specifically, the District argues that Richardson breached his fiduciary duty to the District as a member of the Board when he approved the issuance of the bonds in a financially reckless manner and in bad faith, favoring his own interests over those of the District.  Richardson failed to disclose and consider the development's financial and foreclosure status in making the bonds decision.[1]  To prevent the District from recovering this loss by

---

[1] While the District makes numerous claims pertaining to misrepresentations allegedly made by Richardson, we agree with the district court's conclusion that, other than the breach of fiduciary duty claim discussed here, the alleged misrepresentations were made by Richardson while acting in his capacity as a private developer for Natureview, not as a public employee.  For example, the representations Richardson made to the Board in seeking approval of the bond issuance and his failure to correct Natureview's previous statements within the service plan regarding the development's failure to meet sales expectations, which underlie the District's claims for securities fraud, negligent misrepresentation, false representation, and fraudulent concealment, were made in his role as the developer.

allowing Richardson to claim immunity as a public employee does not effectuate the purpose of the CGIA. Thus, construing the plain language of the CGIA, and acknowledging that we construe its grants of immunity strictly, we conclude the district court correctly concluded that the CGIA did not, on its face, apply to the District's claims against Richardson.

¶ 23 This conclusion is limited to the assertion of CGIA immunity under the facts presented here, and we do not speak to other circumstances under which a public entity, as plaintiff, may sue its own employees for their conduct, or may sue another public entity. Because this is an issue for the legislature, we express no opinion regarding the scope of the CGIA in civil lawsuits containing circumstances not presented here.

¶ 24 In view of our disposition, we do not address defendants' remaining contentions.

### III. Conclusion

¶ 25 The order is affirmed.

JUDGE ROMÁN and JUDGE MÁRQUEZ concur.