Opinion by JUDGE BOORAS
¶ 1 In this taxpayer dispute, we resolve whether a corporation with no property or payroll of its own must be included in a *941 Colorado combined income tax return. Plaintiff, Agilent Technologies, Inc. (Agilent), and defendants, the Department of Revenue of the State of Colorado (Department) and Barbara Brohl, in her official capacity as the Executive Director of the Department (Director), appeal the district court's entry of summary judgment in Agilent's favor. The district court concluded that Agilent was not required to include its holding company, Agilent Technologies World Trade, Inc. (WT), in its Colorado combined corporate income tax returns for the tax years 2000 to 2007. We affirm.
I. Colorado Corporate Income Tax Law
¶ 2 Because it is helpful in understanding the issues in this case, we begin by setting forth some of the legal framework.
¶ 3 A "C corporation" is "any organization taxed as a corporation for federal income tax purposes." § 39-22-103(2.5), C.R.S. 2017. Colorado imposes a tax on the income of a C corporation from tangible or intangible property located or having a situs in this state as well as on income from any activities carried on in this state, regardless of whether they are carried on in intrastate, interstate, or foreign commerce. § 39-22-301(1)(d)(II), C.R.S. 2017.
¶ 4 Large businesses often operate through multiple related C corporations that are interconnected in complex ways, operating to various degrees inside Colorado, in other states, and in foreign countries. To calculate the taxable income of affiliated corporations attributable to Colorado, the Department applies the "unitary apportionment" accounting method, which has been upheld by the United States and Colorado Supreme Courts. Hewlett-Packard Co. v. State, Dep't of Revenue , 749 P.2d 400, 402 (Colo. 1988).
[The] unitary apportionment [method] is based on a recognition that an integrated business may operate through several separately incorporated entities. In such case, transactions between corporations under common control may lack economic substance; therefore, it is necessary to consider the corporate group as a whole. This method combines the income of all related business entities which are engaged in the same integrated or unitary business to arrive at a net income base. A percentage of this net income base is then apportioned to the relevant taxing jurisdiction according to a formula which measures the contribution of the business activities within the taxing jurisdiction (e.g., Colorado) to the profit of the entire unitary business. This percentage of the net income base, rather than the entire net income base, is then taxed by the state.
Id. at 401.
¶ 5 Section 39-22-303, C.R.S. 2017, sets forth rules for determining which related C corporations must be included in a combined, unitary group for the purpose of state taxation. The first step is to determine whether the corporation conducts business primarily inside or outside of the United States:
• Section 39-22-303(8) provides that a corporation is not required to include in a combined report the income "of any C corporation which conducts business outside the United States if eighty percent or more of the C corporation's property and payroll, as determined by factoring pursuant to section 24-60-1301, C.R.S., is assigned to locations outside the United States."
• Section 39-22-303(12)(c) clarifies that an includible C corporation is "any C corporation which has more than twenty percent of the C corporation's property and payroll as determined by factoring pursuant to section 24-60-1301, C.R.S., assigned to locations inside the United States."
¶ 6 To require a combined report as part of a unitary business, an affiliated group of C corporations must also satisfy three of the six factors set forth in section 39-22-303(11)(a) for the tax year at issue as well as the two preceding tax years. These factors address characteristics of a unitary business, such as its functional integration, centralization of management, and economies of scale. See Container Corp. of Am. v. Franchise Tax Bd. , 463 U.S. 159, 178-79, 103 S.Ct. 2933, 77 L.Ed.2d 545 (1983).
*942 ¶ 7 Finally, section 39-22-303(6) provides as follows:
In the case of two or more C corporations, whether domestic or foreign, owned or controlled directly or indirectly by the same interests, the executive director may, to avoid abuse, on a fair and impartial basis, distribute or allocate the gross income and deductions between or among such C corporations in order to clearly reflect income.
¶ 8 The parties appeal the district court's application of these statutes to the facts described below.
II. Background
A. Facts
¶ 9 Agilent is a parent company of a worldwide group of affiliates. It provides "core bio-analytical and electronic measurement solutions to the communications, electronics, life sciences, and chemical analysis industries." Agilent is incorporated in Delaware, but during the years at issue (tax years 2000 to 2007), it maintained research and development and manufacturing sites in Colorado. Agilent concedes it was subject to Colorado corporate income tax during this time and timely filed corporate income tax returns for these years.
¶ 10 WT is a subsidiary of Agilent and is incorporated in Delaware. It was formed as a holding company to own foreign entities operating solely outside the United States. During the years at issue, WT owned four non-United States entities, which operated in Venezuela, Russia, Poland, and Turkey. For federal income tax purposes, WT and the foreign entities elected to be taxed as a single corporation. As a holding company, WT does not own or rent property, has no payroll, and does not advertise or sell products or services of its own. The foreign entities, however, own property and have payroll.
B. Agilent's Corporate Tax History
¶ 11 Agilent did not include WT in its corporate tax returns for the years at issue. In 2010, the Department issued notices of corporate income tax deficiency requiring that Agilent include WT in its Colorado combined returns for those years, assessing tax, interest, and penalties totaling $13,345,601. Agilent contested the adjustments made by the Department. The Director upheld the notices of deficiency. The Department issued a "Notice of Final Determination and Assessment and Demand for Payment" in May 2014, including updated interest, in the amount of $13,720,507.
C. The District Court's Order
¶ 12 Agilent sought review of the Department's determination in the district court. After considering the parties' motion and cross-motion for summary judgment, the district court ruled in Agilent's favor. In doing so, the court held as follows:
• Section 39-22-303(8) did not prevent WT from being includible in Agilent's combined Colorado return, because Agilent could not demonstrate that eighty percent or more of WT's property and payroll was assigned to locations outside the United States.
• WT satisfied at least three of the six factors for inclusion in Agilent's Colorado combined return pursuant to section 39-22-303(11)(a) -namely, (1) Agilent and WT had common directors as set forth in section 39-22-303(11)(a)(V) ; (2) Agilent and WT had common officers as set forth in section 39-22-303(11)(a)(VI) ; and (3) WT's use of Agilent's trademarked terms "Agilent" and "Agilent Technologies" constituted substantial use of trademarks owned by Agilent under section 39-22-303(11)(a)(IV).
• Including WT in Agilent's Colorado combined return would not violate the Commerce Clause.
• Even so, the Department could not require that WT be included in Agilent's combined return because WT did not meet the definition of an includible C corporation as set forth in section 39-22-303(12)(c). As a holding company with no property or payroll of its own, it did not have twenty percent or more of its property or payroll factors assigned to locations inside the United States.
*943 • Section 39-22-303(6) did not provide the Department with an alternative method of allocating income apart from the combination of affiliated corporations under subsections (11)(a) and (12)(c).
• The economic substance doctrine did not give the Department the authority to disregard WT's corporate structure and tax it because no factual grounds support a conclusion that the structure of Agilent and WT was put into place to avoid Colorado taxes.
¶ 13 Therefore, having concluded the Department was prohibited from requiring Agilent to include WT in its Colorado combined income tax return, the court entered summary judgment for Agilent.
III. Appellate Review and Statutory Interpretation
¶ 14 We review a district court's grant of summary judgment de novo. Medved v. State , 2016 COA 157, ¶ 12, 411 P.3d 206. "Summary judgment is a drastic remedy and, therefore, is only appropriate where there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law." Id. ; see C.R.C.P. 56(c).
¶ 15 Statutory interpretation is also a question of law that we review de novo. Colo. Dep't of Revenue v. Creager Mercantile Co. , 2017 CO 41M, ¶ 16, 395 P.3d 741. "When construing a statute, we must ascertain and give effect to the intent of the General Assembly. To determine legislative intent, we look first to the plain language of the statute. When the statutory language is clear and unambiguous, 'we look no further and apply the words as written' " without resorting to legislative history or other rules of statutory construction. Id. (citations omitted); see Smith v. Exec. Custom Homes, Inc. , 230 P.3d 1186, 1189 (Colo. 2010).
¶ 16 We may consider and even defer to an agency's interpretation of the statute, but we are not bound by the agency's interpretation. BP Am. Prod. Co. v. Colo. Dep't of Revenue , 2016 CO 23, ¶ 15, 369 P.3d 281. "Deference is not warranted where the agency's interpretation is contrary to the statute's plain language." Id.
¶ 17 Generally, we resolve all doubts regarding interpretation of the language in a tax statute in favor of the taxpayer. Id. at ¶ 16. Deductions and exemptions are not allowed, however, unless they are clearly provided for in the statute. Id.[1]
IV. WT Is Not an Includible C Corporation Under Section 39-22-303(12)(c)
¶ 18 The Department contends the district court erred when it held that WT was not an includible C corporation under section 39-22-303(12)(c). We disagree.
¶ 19 Section 39-22-303(12)(c) requires inclusion of a corporation in a combined report if "more than twenty percent of the C corporation's property and payroll" is assigned to locations inside the United States. Because the statute refers to a corporation's property and payroll, it is not clear whether it was intended to apply to a corporation structured like WT-namely, a holding company which has no property or payroll of its own, inside or outside the United States. However, given that both parties agree that a company structured like WT is within the provisions of section 39-22-303(12)(c), we analyze the language of the statute.[2]
¶ 20 If a company has no property or payroll, then on the basis of a mathematical *944 calculation that twenty percent of zero is zero, it does not have twenty percent or more of its property or payroll assigned to locations within the United States. The Department's own regulation 39-22-303.12(c), "Corporations without property and payroll factors," in effect since 1994, supports this interpretation of the statute:
C.R.S. 39-22-303(12)(c) provides that only those corporations whose property and payroll factors are assigned twenty percent or more to locations inside the United States may be included in a combined report. Since corporations that have no property or payroll factors of their own cannot have twenty percent or more of their factors assigned to locations in the United States, such corporations, by definition, cannot be included in a combined report.
Taxpayer Serv. Div. Reg. 39-22-303.12(c), 1 Code Colo. Regs. 201-2 (emphasis added).[3]
¶ 21 The Department argues that this regulation was intended to apply only to foreign sales corporations, which are foreign subsidiaries of American corporations with a physical presence in a foreign country but not necessarily any foreign property or payroll. However, because the regulation does not specifically refer to foreign sales corporations, we decline to limit the regulation's application in this manner.
¶ 22 The Department further argues that section 39-22-303(12)(c) must apply to WT on the theory that WT actually had property. While the parties agree that WT had no independent property or payroll, the Department contends that WT had domestic property because it used tangible personal property of Agilent-computers, printers, and other equipment to complete loan transactions, share purchase agreements, and fulfill corporate formalities and documentation.
¶ 23 Under section 39-22-303(12)(c), a corporation's property and payroll are determined under factoring formulas for apportioning business income in section 24-60-1301, article IV. The formula for apportioning the property factor uses an "average value of the taxpayer's real and tangible personal property owned or rented and used in this State." § 24-60-1301, art. IV(10). The Department's regulation interpreting this provision allows it to infer value for property owned by others and used by the taxpayer at no charge or rented at a nominal rate by determining the net annual rental rate for such property based on the reasonable market rate. Taxpayer Serv. Div. Reg. IV.18.(b)(2), 1 Code Colo. Regs. 201-3.
¶ 24 However, by simply allowing a corrected value for property that is used or rented at less than market value, this regulation does not define when property is considered "rented and used." Thus, it does not determine whether WT is an includible C corporation on the basis of renting property.
¶ 25 The record supports a conclusion that Agilent's equipment and administrative staff were used by WT and Agilent in connection with transactions between the two, but it contains little to show how the property came to be used by WT. For example, equipment can be used under a service agreement without being "rented." See Bos. Prof'l Hockey Ass'n v. Comm'r of Revenue , 443 Mass. 276, 820 N.E.2d 792, 806 (2005) (use of satellite transponder was in the nature of a service agreement and, thus, not includible in the property factor where the customer did not obtain a legal interest of some specified duration in the property itself). The record contains no indication that WT obtained any legal interest in the personnel or equipment it used or that Agilent relinquished its right to possess and control the property. Under these circumstances, we agree with the district court's conclusion that WT had no property factors.
*945 ¶ 26 Accordingly, we conclude that applying section 39-22-303(12)(c), Agilent was not required to include WT in its Colorado combined tax return.
V. Section 39-22-303(8) Does Not Exclude WT from Agilent's Combined Return
¶ 27 Agilent argues, on the opposite side of the coin, that section 39-22-303(8) excludes WT from its combined return. We disagree.
¶ 28 Section 39-22-303(8) excludes corporations from mandatory inclusion in a combined report if "eighty percent or more of the C corporation's property and payroll ... is assigned to locations outside the United States."
¶ 29 Agilent notes that, for federal income tax purposes, WT's foreign subsidiaries elected to be treated as divisions of WT; therefore, WT and its subsidiaries were treated as a single C corporation. Agilent argues that WT and its foreign subsidiaries must also be treated as a single C corporation for Colorado income tax purposes. Under this approach, the property and payroll of the foreign subsidiaries, which are entirely outside the United States, would be considered property and payroll of WT. Thus, Agilent argues that one hundred percent of WT's property and payroll (namely, that of the foreign subsidiaries) is outside the United States, which prohibits the Department from requiring that Agilent include WT in its combined return.
¶ 30 In interpreting Colorado tax laws, federal regulations shall be given "[d]ue consideration" if they do not conflict with Colorado tax laws. § 39-22-103(11). The fact that WT and its subsidiaries elected, but were not required, to be treated as a single C corporation for federal tax purposes does not compel Colorado to also treat WT and its subsidiaries as a single C corporation. A federal check-the-box election does not determine whether a corporation is considered domestic or foreign, or subject to or exempt from federal tax. See 26 U.S.C. § 1504 (2012).
¶ 31 When we interpret a statute, we consider the statute as a whole and interpret it in a manner giving consistent, harmonious, and sensible effect to all of its parts; we do not interpret it so as to render any part of it meaningless or absurd. Devora v. Strodtman , 2012 COA 87, ¶ 9, 282 P.3d 528. To allow a corporation's election regarding its consolidation for federal tax purposes to determine its eligibility for Colorado state taxes would render the rules set forth in section 39-22-303 meaningless. We decline to adopt such an interpretation. The district court did not err when it concluded that WT's federal election to include its foreign subsidiaries in one C corporation did not mandate consideration of the foreign subsidiaries' property or payroll when applying section 39-22-303(8).
VI. Alternative Bases for Taxation of WT's Income
¶ 32 The Department contends the district court erred when it ruled that, as a matter of law, section 39-22-303(6) could not be applied as an alternative basis for including of WT in Agilent's tax return. It also contends that the economic substance doctrine should be applied to permit taxation of WT even in the absence of specific statutory authorization.
A. Section 39-22-303(6)
¶ 33 Section 39-22-303(6) authorizes the Department to allocate income and deductions among corporations that are owned or controlled by the same interests on a fair and impartial basis in order to clearly reflect income and avoid abuse. The district court held that section 39-22-303(6) could not be applied to allocate income among affiliated corporations that were not otherwise includible under section 39-22-303(8) - (12). The court reasoned that subsection (6) "is not a vehicle for combining income of affiliated corporations, and cannot be used to circumvent the combined statutory regime found in [ section 39-22-303(8) through (12) ]." The court relied on the Department's regulation 39-22-303.6, which states:
Even though subsection 39-22-303(6), C.R.S. has been superseded by subsection 39-22-303(11), C.R.S., as a vehicle for requiring combined reporting for affiliated C corporations, subsection 39-22-303(6) is still available for use by the Department of Revenue or by the taxpayer for determining *946 Colorado taxable income by use of methodology such as that contained in section 482 of the Internal Revenue Code in applying "arm's length pricing" procedures.
Taxpayer Serv. Div. Reg. 39-22-303.6, 1 Code Colo. Regs. 201-2.
¶ 34 The evolution of section 39-22-303(6) is informative. Prior to the addition of the unitary apportionment rules, the predecessor statute, enacted in 1937, read as follows:
In case of two or more businesses, whether or not incorporated, and whether or not organized in Colorado, owned or controlled directly or indirectly by the same interests the State Treasurer may distribute or allocate the gross income and deductions between or among such businesses or may require returns on a consolidated basis if deemed necessary in order to prevent evasion of taxes and clearly reflect the income.
Ch. 175, sec. 18, 1937 Colo. Sess. Laws 719. Thus, prior to the enactment of the unitary apportionment rules, subsection (6) provided authorization for requiring a consolidated return. The supreme court interpreted this version of the statute as allowing the Department to "distribute or allocate the income of corporations owned or controlled by the same interests if it concludes that that is the most effective method of taxing 'all the income that Colorado can constitutionally tax.' " Joslin Dry Goods Co. v. Dolan , 200 Colo. 291, 296, 615 P.2d 16, 19 (1980) (quoting Coors Porcelain Co. v. State , 183 Colo. 325, 329, 517 P.2d 838, 840 (1973) ).
¶ 35 In 1979, the statute was amended to omit the phrase "to prevent evasion of taxes." Ch. 373, sec. 34, § 39-22-303(6), 1979 Colo. Sess. Laws 1445. The General Assembly added the rules set forth in section 39-22-303(8) - (12) to the reporting statutes in 1985. Ch. 309, sec. 1, § 39-22-303(8)-(12), 1985 Colo. Sess. Laws 1273-76. While the legislature could have modified or deleted section 39-22-303(6) at that time, it did not. Then, in 1989, four years after the enactment of the unitary apportionment rules, the General Assembly amended section 39-22-303(6) again, to its current version. The amendments added the language "to avoid abuse, on a fair and impartial basis," and omitted the language "or may require returns on a consolidated basis, if deemed necessary." Ch. 331, sec. 2, § 39-22-303(6), 1989 Colo. Sess. Laws 1500. Section 39-22-303 has been modified seven times since then, and section 39-22-303(6) has remained unchanged.
¶ 36 Thus, the unitary apportionment rules superseded subsection (6) to the extent that consolidated returns for corporations that had payroll and property became covered under subsections (8) through (12). Again, the parties agree that section 39-22-303(12) applies in this case, so subsection (6) does not serve as an alternative basis for taxation to subsection (12).
¶ 37 Subsection (6) remains applicable to avoid abuse of Colorado's corporate taxation laws. While the statutory language does not provide a definition for what constitutes "abuse," the modification of the statute indicates that it need not rise to the level of "evasion of taxes," as that language was excised from a previous version of the provision, and later replaced by the phrase "to avoid abuse."
Tax abuse, like tax evasion, is a method taxpayers use to minimize or eliminate their tax liability. Despite similar tax-minimization goals, abusive tax avoidance transactions are easily distinguishable from tax evasion. Tax evasion involves the deliberate breach of the tax law through fraud, concealment, or other illegal measures so that a taxpayer can avoid paying its true tax liability....
On the other hand, tax abuse does not involve the use of illegal measures to create tax benefits. Instead, tax abuse generally exists when a taxpayer reduces its tax liability by ordering its affairs in a manner that complies with the text of the statute but contradicts the intent of the law it purports to follow."
Orly Sulami, Tax Abuse-Lessons from Abroad , 65 SMU L. Rev. 551, 558 (2012).
¶ 38 However, neither party contends that the structure of WT was adopted solely to avoid taxation or that WT lacked a business purpose apart from reducing tax liability. Simply because a corporation is not includible in a tax return under *947 section 39-22-303(12) does not mean that its status is an "abuse." Accordingly, the district court did not err when it concluded section 39-22-303(6) did not provide a basis for including WT in Agilent's tax return.
B. Economic Substance Doctrine
¶ 39 The economic substance doctrine permits a court to disregard, for tax purposes, transactions that comply with the literal terms of the tax code but lack economic reality. Coltec Indus., Inc. v. United States , 454 F.3d 1340, 1352 (Fed. Cir. 2006). A lack of economic substance is sufficient to disqualify the transaction without proof that the taxpayer's sole motive is tax avoidance. Id. at 1355.
¶ 40 However, we note that the doctrine has been described as a judicial "anti-abuse doctrine." See, e.g. , Santander Holdings USA, Inc. v. United States , 844 F.3d 15, 25 n.13 (1st Cir. 2016) ; Southgate Master Fund, L.L.C. v. United States , 659 F.3d 466, 479 (5th Cir. 2011) ; In re Wyly , 552 B.R. 338, 567 (Bankr. N.D. Tex. 2016). To the extent that taxation under section 39-22-303(6) is available to avoid abuse, the principles underlying the economic substance doctrine may be subsumed by the statute.
¶ 41 In any event, assuming without deciding that the economic substance doctrine can be applied independently, there is no support for its application in this case. Under TD Banknorth, N.A. v. Department of Taxes , 185 Vt. 45, 967 A.2d 1148, 1159 (2008), relied on by the Department, a company whose sole reason for being is to minimize taxes can be disregarded for tax purposes under the economic substance doctrine. "Whether a particular transaction has economic substance and business purpose other than the avoidance of taxes is primarily an issue of fact." Id. at 1157.
¶ 42 Here, the district court found that WT "holds foreign operating subsidiaries for Agilent, thereby providing bona fide non-tax related benefits, including protection of the parent's assets against foreign creditors' claims and consolidation of distributions from companies around the world made in various currencies." These functions cannot be disregarded simply because WT's structure also provides a tax benefit. Again, no party contends that WT lacks a business purpose apart from reducing tax liability.
¶ 43 Therefore, the economic substance doctrine does not provide an independent basis in this case for including WT in Agilent's combined return.
VII. Agilent's Other Contentions
¶ 44 Agilent contends the district court erred when it held that WT satisfied three factors required under section 39-22-303(11) for determining whether affiliated corporations constitute a unitary business. It also contends that if it is required to include WT in a combined return, Colorado's corporate income tax laws violate the Commerce Clause.
¶ 45 Because we have concluded that Agilent is not required to file a consolidated return under section 39-22-303(12), since WT, as a corporation without payroll or property, does not fall within its provisions, we need not reach these contentions.
VIII. Conclusion
¶ 46 We affirm the district court's judgment.
JUDGE WEBB and JUDGE FREYRE concur.

The Department argues that the statutes should be construed as creating a tax exemption, placing the burden on Agilent to clearly establish the right to any claimed exemption for WT. Agilent contends that the statutes are tax imposition statutes and must therefore be construed in their favor as the taxpayer. Because we conclude that the language of the statutes is unambiguous, we need not decide whether the statutes are better categorized as imposing taxes or creating an exemption.

A statute that does not appear to contemplate the issue presented may be ambiguous in scope. See Tallman Gulch Metro. Dist. v. Natureview Dev., LLC , 2017 COA 69, ¶ 19, 399 P.3d 792. Neither party here argues that the statute is ambiguous. However, we note that it may be appropriate for the General Assembly to clarify the scope of the statute.

In 1990, the Office of Legislative Legal Services (OLLS) reviewed earlier Department of Revenue regulations interpreting section 39-22-303(8) and (12)(c), C.R.S. 2017. The earlier regulations provided that corporations without property and payroll of their own were to be considered includible in combined returns. In a memorandum to the General Assembly's Committee on Legal Services, the OLLS wrote that these regulations conflicted with the definition of "includible corporations" set forth in section 39-22-303(12)(c) and impermissibly modified the statutory language. The General Assembly, following the OLLS recommendation, voted against extending these regulations and allowed them to expire in June 1991.